## A97A0592. BROWN v. THE STATE.
### (486 SE2d 370)

ELDRIDGE, Judge.

Appellant, Leonard Eugene Brown, was indicted by the Walker County grand jury on November 8, 1994, for one count of arson and two counts of burglary. Appellant was tried before a jury on March 20 through 22, 1996, and found guilty on all three counts. Appellant received a sentence of twenty years on the arson count and ten years concurrent on the burglary counts.

A hearing under *Jackson v. Denno,* 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964) (*"Jackson-Denno"*) was held outside the presence of the jury after the jury had been selected. During the *Jackson-Denno* hearing appellant testified. During the hearing, appellant, on direct examination contended that he had been held by the police and threatened so that he made a statement to them that he had been present during the arson and burglary, but denied any participation in the fire at the high school. On cross-examination, appellant admitted that he had told the police that he had acted as a look-out, but that such statement had been made under threat from the police. However, appellant also admitted during the cross-examination that the statement was, in fact, true; because he had been present at the school during the arson and burglary and had acted as a look-out.

At trial, appellant testified in his own defense; he denied any involvement in the burglary of the high school; he testified that the only reason that he made the statement to the police about his involvement was because the police threatened him; he denied specifically being present at the high school during the burglary and arson; appellant denied that he had any recall of his testimony at a *Jackson-Denno* hearing. On cross-examination at trial, appellant was asked if he had previously testified at the *Jackson-Denno* hearing that he had been, not only present at the high school, but also acted as the look-out. Repeatedly, appellant denied having made such admission at the hearing.

Detective Tommy Hollander, the named prosecutor in the case, had been present during the *Jackson-Denno* hearing and had heard appellant at that time admit to being present at the high school during the burglary and arson and serving as the look-out. Appellant's counsel made timely objection to the admission of such testimony by Hollander as to what appellant admitted under cross-examination at the *Jackson-Denno* hearing.

A motion for new trial was filed on April 20, 1995, and denied on July 18, 1995. Notice of appeal was filed on August 17, 1995. However, the appeal was dismissed for failure to timely file appellant's brief and enumerations of error. On October 3, 1996, a motion for out-of-time appeal was filed and granted on the same day. The second notice of appeal was filed on November 1, 1996.

Appellant's sole enumeration of error is that the trial court erred in admitting, over objection, appellant's testimony given during the *Jackson-Denno* hearing for the jury's consideration as incriminatory testimony and as prior contradictory, inconsistent statements.

"There is no gainsaying that arriving at the truth is a fundamental goal of our legal system. [Cit.] We have repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences. This is true even though a defendant is compelled to testify against his will. [Cits.] It is essential, therefore, to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth. The defendant's obligation to testify truthfully is fully binding on him when he is cross-examined. His privilege against self-incrimination does not shield him from proper questioning. [Cit.]" *United States v. Havens*, 446 U. S. 620, 626-627 (100 SC 1912, 64 LE2d 559) (1980).

Although warnings under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), have not been given or the *Miranda* rights have not been observed, statements which have been excluded from evidence in the prosecution's case-in-chief become admissible for the purpose of impeachment only when the accused takes the stand and testifies differently; under such circumstances, the excluded statements, as contradictory or inconsistent statements, become admissible for such limited purpose but not to prove guilt; the trial court must give proper limiting instructions when such use is made of otherwise excluded evidence. *Harris v. New York*, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971); *Oregon v. Hass*, 420 U. S. 714 (95 SC 1215, 43 LE2d 570) (1975); *State v. Byrd*, 255 Ga. 665 (341 SE2d 455) (1986); *Jones v. State*, 243 Ga. 820, 825-826 (6) (256 SE2d 907) (1979); *Scott v. State*, 243 Ga. 233 (1) (253 SE2d 698) (1979); *Williams v. State*, 239 Ga. 12, 14 (235 SE2d 504) (1977); *Campbell v. State*, 231 Ga. 69, 76-79 (3) (200 SE2d 690) (1973); *Colbert v. State*, 124 Ga. App. 283 (2) (183 SE2d 476) (1971).

In the case sub judice, after holding a *Jackson-Denno* hearing, the trial court found that the *Miranda* warnings had been properly given and observed that the confession had been freely and voluntarily made by appellant, so that the custodial statements were admissible and were, in fact, admitted. At the hearing on the admissibility of such statements, appellant chose to testify in his own behalf

regarding the voluntariness of the statement. On direct examination, appellant exceeded the necessary parameters for proof of the alleged threats, duress, and coercion, which allegedly negated the voluntariness of the statements, and testified as to his innocence. By voluntarily going into his guilt or innocence and the substance of his statements to the police, appellant waived any constitutional protection that he might have had at the *Jackson-Denno* hearing and left himself open to a thorough and sifting cross-examination as to his guilt or innocence and the truth of his statements.

Further, prior to appellant's testifying at the hearing, defense counsel failed to request a limitation on the scope of the examination and failed to reserve any right against self-incrimination. On direct examination, defense counsel intentionally went into the area of guilt or innocence and did not object when the prosecution sought to cross-examine on the area raised during the direct examination; this pretrial, sworn testimony was not necessary to protect any constitutional rights and exceeded the scope of testimony necessary to protect any constitutional rights. Appellant freely, knowingly, and voluntarily waived the right against self-incrimination, under oath in a judicial hearing, with the aid of counsel. At the trial of the case after the prosecution had rested, appellant exercised his constitutional right to testify in his defense; however, he made the mistake of testifying contrary to the testimony at the *Jackson-Denno* hearing, which the constitution does not give appellant a right to do. Under oath appellant testified that he could not recall what he had said under oath only a day or two previously, which laid the foundation, under OCGA § 24-9-83, for his impeachment by such testimony. Thus, the trial court correctly ruled not only that the custodial statement was admissible but also that the appellant's testimony at the hearing was admissible. The limitations under *Scott v. State*, supra; *Jones v. State*, supra; and *State v. Byrd*, supra, are inapplicable; the statements had been admitted into evidence and therefore, the testimony of the appellant was admissible to prove guilt as substantive evidence, as well as for impeachment. See *Gibbons v. State*, 248 Ga. 858, 862-863 (286 SE2d 717) (1982). The United States Supreme Court held in *United States v. Kahan*, 415 U. S. 239 (94 SC 1179, 39 LE2d 297) (1974), that an accused who testifies at trial can be impeached by prior sworn statements made as a part of the proceedings. See also *Cowards v. State*, 266 Ga. 191, 193 (2) (465 SE2d 677) (1996).

Appellant mistakenly relies upon *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968). In that case, the defendant had to testify at a motion to suppress in order to establish standing to assert Fourth Amendment rights regarding an alleged illegal search and seizure of evidence. The motion was denied and the prosecution used such testimony at the trial to convict the defendant but

not as contradictory testimony because the defendant did not testify at trial in his own behalf. The United States Supreme Court reversed the conviction because the defendant had been compelled to choose between constitutional rights. Justice Black in a rare dissent to over-turning a conviction on constitutional grounds, stated: "The conse-quence of the Court's holding, it seems to me, is that defendants are encouraged to come into court, either in person or through other wit-nesses, and swear falsely that they do not own property, knowing at the very moment they do so that they have already sworn precisely the opposite in a prior court proceeding. This is but to permit lawless people to play ducks and drakes with the basic principles of the administration of criminal law. . . . While our Constitution does pro-vide procedural safeguards to protect defendants from arbitrary con-victions, that governmental charter holds out no promises to stultify justice by erecting barriers to the admissibility of relevant evidence voluntarily given in a court of justice. Under the first principles of ethics and morality a defendant who secures a court order by telling the truth should not be allowed to seek a court advantage later based on a premise directly opposite to his prior solemn judicial oath." Id. at 398-399.

In short, the Fourth Amendment has a focus and established jurisprudence that differs from the Fifth Amendment. The priorities of the Fifth Amendment were fully satisfied in the case sub judice. Therefore, *Simmons v. United States*, supra, a Fifth Amendment case, is distinguishable as a matter of fact and law. There should be no attempt to superimpose the jurisprudence of one on to a case aris-ing under the other, because the Amendments drastically differ. The United States Supreme Court has recognized that the limited use immunity applied in *Simmons v. United States*, supra, should be lim-ited to Fourth Amendment cases and has declined to extend the scope of such holding. In *United States v. Salvucci*, 448 U. S. 83, 94 (100 SC 2547, 65 LE2d 619) (1980), the Court held: "[p]rincipally, respondents assert that the prosecutor may still be permitted to use the defendant's testimony to impeach him at trial. This Court has not decided whether *Simmons* precludes the use of a defendant's testi-mony at a suppression hearing to impeach his testimony at trial. But the issue presented here is quite different from the one of whether 'use immunity' extends only through the Government's case-in-chief, or beyond that to the direct and cross-examination of a defendant in the event he chooses to take the stand. That issue need not be and is not resolved here, for it is an issue which more aptly relates to the proper breadth of the *Simmons* privilege, and not to the need for retaining automatic standing." Id. at 93-94. The court allowed the impeaching testimony and upheld the conviction. In the case sub judice, appellant's assertions cannot help but bring to mind the

144

Court's holding in *United States v. Kahan*, supra at 243: "[t]he protective shield of *Simmons* is not to be converted into a license for false representations on the issue of indigency free from the risk that the claimant will be held accountable for his falsehood. Cf. *Harris v. New York*, [supra]." *Harris v. New York*, supra at 226, held that the *Miranda* shield "cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." See also *State v. Byrd*, supra at 667.

Having previously found that the statements were voluntarily made and admissible, the trial court was under no duty to instruct the jury that they could only consider the appellant's testimony from the *Jackson-Denno* hearing for purposes of impeachment only, because the jury was free to consider such evidence to determine guilt. The trial court did not err in admitting such relevant and probative admissions by appellant, who had waived his right against self-incrimination by testifying in his own behalf. "It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. [Cits.] It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or *the like*. [Cits.] Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." (Emphasis supplied.) *McGautha v. California*, 402 U. S. 183, 215 (91 SC 1454, 28 LE2d 711) (1971).

The trial court did not err in the evidentiary ruling.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED APRIL 9, 1997.
 Before Judge Loggins.
*Frank B. Perry & Associates, Michael E. Brush*, for appellant.
*Ralph L. Van Pelt, Jr.*, District Attorney, *Michael J. Moeller, Christopher A. Arnt*, Assistant District Attorneys, for appellee.