A97A0388. NIHART v. THE STATE.
(488 SE2d 740)

RUFFIN, Judge.

John Nihart appeals from his conviction for aggravated sodomy and cruelty to children. For reasons which follow, we affirm in part and reverse in part.

The evidence shows that in August 1991, Patricia Covello and her 13-year-old daughter, J. M., visited Nihart at his home in Smyrna, Cobb County, Georgia. At the time, Covello lived in Connecticut with her two sons and J. M.

Covello testified that during the first night of their visit, she and Nihart entered J. M.'s bedroom. At Nihart's request, Covello held J. M.'s wrists while he removed J. M.'s underwear and placed his tongue on her vagina. J. M. similarly testified that she awoke that night to find her mother holding her wrists and Nihart touching her vagina with his mouth. According to Covello, Nihart also "performed oral sex on [J. M.]" one evening when Covello was not in the room. In addition, Covello and J. M. testified about a third incident, during which Nihart placed his mouth on J. M.'s vagina while Covello placed her mouth on Nihart's penis.

J. M. further testified that before she left Georgia, Nihart told her if she reported the incidents, "he would go to jail along with [her] mom. And he told [her] that [her] brothers would go to foster homes. And he said when he got out he'd kill [her] and [her] mom and [her] brothers." J. M. could not recall where Nihart made this statement, but believes it occurred on the day she and her mother returned to Connecticut.

J. M. ultimately reported the incidents to Connecticut authorities, who commenced an investigation. Georgia authorities obtained the results of Connecticut's investigation and subsequently arrested Nihart, who was indicted on one count of aggravated sodomy and one count of cruelty to children. A jury found Nihart guilty on both counts, and the trial court sentenced him to life in prison for aggravated sodomy and 20 years on probation for cruelty to children. Nihart now appeals his conviction and sentence.

1. In his first enumeration of error, Nihart argues through new appellate counsel that his two trial attorneys provided him ineffective assistance at trial. After an evidentiary hearing at which both of Nihart's trial counsel testified, the trial court denied Nihart's motion for new trial and implicitly concluded that trial counsel were effective. We find no basis on which to reverse the trial court's determination in this regard.

"To establish a claim of ineffective assistance of counsel, [Nihart] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). [Nihart] must establish both the performance and the prejudice components of the *Strickland* test." *Johnson v. State*, 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996). "A conviction will not be reversed on the basis of ineffective assistance of counsel unless 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' . . . [Cits.]" *Cunningham v. State*, 222 Ga. App. 740, 743-744 (2) (475 SE2d 924) (1996).

Nihart cannot meet his burden simply by questioning trial tactics. " 'Trial strategy and tactics do not equate with ineffective assistance of counsel. . . . [T]he fact that [Nihart] and his present counsel disagree with the decisions made by trial counsel does not require a finding that [Nihart's] original representation was inadequate.' " (Citations omitted.) *White v. State*, 193 Ga. App. 428, 430 (2) (387 SE2d 921) (1989). Trial counsel's decisions regarding "which witnesses to call, whether and how to conduct cross-examinations, . . . and all other strategies and tactical decisions are the exclusive province of the lawyer[s] after consultation with the client." (Citation and

punctuation omitted.) *Hudson v. State*, 218 Ga. App. 671, 672 (1) (462 SE2d 775) (1995). To succeed in his claim, Nihart "must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Citations and punctuation omitted.) *White*, supra. Absent clear error, we will affirm the trial court's finding that Nihart received effective assistance of trial counsel. *Johnson*, supra.

(a) Nihart argues that his trial counsel were ineffective because they asked Detective Mary Katherine Wrozier, the investigating officer in Georgia, to comment on J. M.'s truthfulness.

The record shows that on cross-examination, defense counsel tendered Detective Wrozier as an expert in the area of validating child sexual abuse complaints, and the prosecution raised no objection. Counsel then inquired about Detective Wrozier's efforts to validate J. M.'s complaint. Specifically, counsel highlighted her reliance on the Connecticut investigation and failure to interview J. M. before arresting and charging Nihart. Trial counsel further questioned Detective Wrozier about certain indicia of truthfulness Nihart claimed were missing in this case. Counsel then asked: "How do you know which side is the truth now in this case? Can you really tell just by having interviewed this witness one time two days ago?" Detective Wrozier responded: "I feel that she told the truth then. She's telling the truth now."

Nihart argues that trial counsel's decision to elicit testimony regarding J. M.'s credibility was unreasonable. While J. M.'s credibility rested exclusively within the jury's province and should not have been bolstered by Detective Wrozier, *Guest v. State*, 201 Ga. App. 506, 507-508 (1) (411 SE2d 364) (1991), trial counsel made a conscious, tactical decision to explore this area of testimony and raise questions regarding Detective Wrozier's decision to pursue this case. As established at the hearing on Nihart's motion for new trial, one goal of defense counsel's cross-examination was to attack the credibility of the State's witnesses and "to show that . . . there was a rush [to] judgment made, with very little — with, in fact, no investigation . . . of these witnesses from Connecticut." Trial counsel urged this defense to the jury in closing argument, arguing that Detective Wrozier ignored her "duty to distinguish between valid and invalid complaints of child abuse" and simply relied on the investigation conducted by Connecticut authorities.

At the new trial hearing, both defense counsel testified that they discussed their trial strategy with Nihart, who agreed with their ultimate tactics. We refuse to second-guess such a strategic decision, which falls within the lawyers' exclusive province after consultation with the client. *Hudson*, supra. Accordingly, the trial court did not err in denying Nihart's new trial motion on this ground.

(b) Nihart further challenges defense counsel's decision to introduce a sexually explicit card that Covello sent Nihart. Nihart complains that the card corroborated testimony from J. M. and Covello that he asked for and received nude pictures of J. M. The trial transcript reveals, however, that counsel introduced this evidence to impeach Covello, who testified that she did not send any mail to Nihart.

"The fact that [appellate counsel argues] that this tactic hindered rather than aided [Nihart's] defense has no bearing on the reasonableness of trial counsel's tactics. [Cit.]" *Hammond v. State*, 264 Ga. 879, 882 (3) (a) (452 SE2d 745) (1995). The trial court did not err in denying Nihart's motion for new trial on this ground.

(c) Nihart also questions trial counsel's decision to present good character testimony, which the State impeached with evidence of Nihart's two prior drug convictions. Nihart argues that counsel's tactic enabled prosecutors to highlight his drug convictions.

Both of Nihart's trial counsel testified at the new trial hearing that they elected to risk revealing the prior offenses in order to introduce the good character evidence. As described by one defense counsel: "[W]e were aware that [Nihart] had what amounted to a misdemeanor drug conviction. It was so old, so remote in time and it was so minor in nature. . . . These allegations on this charge were so serious that we felt that we had to let the jury know that. He had no record other than that one little incident back when essentially he was a kid and that essentially he was of good character. We wanted that character charge." Co-defense counsel similarly testified that after consultation with Nihart, they decided to introduce character evidence, despite the prior convictions.

The decision to introduce the character evidence, and potentially open the door for impeachment, was clearly one of tactics and strategy. One trial counsel testified that "we thought that [the good character evidence] was more important to the defense than the damage that would come if the jury found out that he had some old minor drug offense." Again, we refuse to second-guess counsel's strategic decision. Furthermore, in light of the other evidence of guilt, Nihart has shown no prejudice from introduction of these drug convictions. See *Hayes v. State*, 263 Ga. 15, 16 (1) (426 SE2d 557) (1993). The trial court properly rejected this argument as a ground for ineffective assistance of counsel.

(d) Nihart also argues that trial counsel could have guarded against this impeachment evidence by objecting to the introduction of his misdemeanor drug conviction as an offense not involving moral turpitude. Even if such evidence is objectionable, we find no ineffective assistance of counsel.

When questioned at the new trial hearing, one trial counsel tes-

tified that the defense team decided not to "hide" this misdemeanor because they wanted the jury to know that Nihart had not been convicted of any sexually related or child abuse offenses. Thus, it appears that counsel decided not to challenge this evidence in order to establish that Nihart had no prior sex offenses. As said earlier, we refuse to second-guess counsel's strategic decision. Moreover, as discussed above, Nihart has not shown that introduction of this conviction prejudiced his defense.

(e) During cross-examination, trial counsel asked Detective Wrozier how she contributed to the investigation, which was conducted to a large extent by Connecticut authorities. Detective Wrozier responded that she "attempted to get a statement from Mr. Nihart, and was advised that he would not be able to get a state — give me a statement." Claiming that Detective Wrozier had improperly commented on Nihart's decision to remain silent, defense counsel moved for a mistrial. The trial court denied the motion after finding the comment responsive to defense counsel's question. At defense counsel's request, however, the trial court purported to give a curative instruction to the jury.

Nihart now argues that trial counsel ineffectively elicited Detective Wrozier's comment. Pretermitting the question of whether counsel's performance was deficient, Nihart has not shown any prejudice.

Evidence regarding a defendant's decision to remain silent is objectionable and should be excluded. *Sims v. State*, 213 Ga. App. 151, 152 (2) (444 SE2d 121) (1994). " 'Improper reference to a defendant's silence, however, does not automatically require reversal. (Cits.)' [Cit.]" Id. The trial court immediately gave curative instructions regarding Nihart's right to remain silent and "unambiguously instructed the jury that they were not permitted to draw any adverse inference from the fact [that Nihart] asserted his right to silence." Id. Furthermore, defense counsel did not elicit the response as a comment on Nihart's decision to remain silent. Instead, the response resulted from counsel's effort to impeach Detective Wrozier about her actual involvement in the case.

Under these circumstances, a mistrial was not necessary. The curative instruction was sufficient to remove any adverse inference that the jury might have drawn from the response. Id. See also *Davis v. State*, 157 Ga. App. 290, 291 (277 SE2d 286) (1981). Accordingly, trial counsel's cross-examination of Detective Wrozier did not prejudice Nihart's defense.

(f) To support his ineffective assistance of counsel claim, Nihart further argues that trial counsel failed to object to evidence improperly introduced by the State to impeach Robert Krug, a private investigator hired by the defense. The transcript shows that during cross-examination, the State asked Krug about a warrant taken out for his

arrest by another citizen following an argument in traffic. Krug admitted that he entered the Cobb County Diversion Program on the charge and explained his reasons for entering the program. On re-direct examination, Krug also described his version of the incident to the jury.

Nihart argues that defense counsel should have objected to this impeachment evidence because the incident did not result in a conviction. Even if trial counsel could have properly objected to the evidence, however, Nihart has not shown that the failure to object prejudiced his defense. On re-direct examination, defense counsel gave Krug the opportunity to rehabilitate himself and fully explain his version of the events. We find no reasonable probability that the result in this case would have been different but for trial counsel's failure to object to this evidence. *Cunningham*, supra.

(g) Finally, Nihart argues that his trial counsel's closing argument was ineffective because counsel conceded to the jury that the State proved its case. During closing argument, trial counsel stated the following. "[The prosecutor] told you in opening statement that this wasn't the only time [the aggravated sodomy] happened. It occurred other times. Now notice that plural. She didn't say it occurred another time, which would give us two incidents. She said it occurred other times. Now, that makes us at least three. [Detective Wrozier] said that when she talked to [J. M.] on Sunday night, that [J. M.] described three incidents. They said they were going to prove three incidents to you. Now, they charged [Nihart] with one incident. They told you they were going to prove three, and they actually proved two. They didn't do what they promised you they would do. They didn't meet their burden of proof. It's your duty to acquit in that situation."

This passage from defense counsel's lengthy closing argument, during which counsel vigorously attacked the State's evidence, does not establish ineffective assistance of counsel. Defense counsel specifically argued that the jury must acquit because the State had not met its burden of proof. Reading the passage in context, it is clear that counsel made no concession of guilt.

"[D]efense counsel are given wide latitude in closing arguments. This Court will not, with benefit of hindsight, second-guess defense trial strategies in closing arguments. Accordingly, we find no error warranting reversal." (Citations and punctuation omitted.) *McGarity v. State*, 212 Ga. App. 17, 22-23 (7) (440 SE2d 695) (1994).

2. In his second enumeration of error, Nihart argues that the trial court improperly denied his motion for directed verdict on the cruelty to children charge because the State failed to prove venue in Cobb County. We agree.

"Generally, criminal actions must be tried in the county where

the crime was committed. OCGA § 17-2-2 (a). And, venue must be established beyond a reasonable doubt. [Cit.]" *Minter v. State*, 258 Ga. 629 (1) (373 SE2d 359) (1988). Our Supreme Court has further held, however, that "when the evidence is not conflicting and when no challenge to venue is raised at trial, slight evidence is sufficient to prove venue. [Cit.]" Id. Pretermitting whether his plea of not guilty is sufficient to raise the issue of venue, the record shows that Nihart first raised the venue challenge in his motion for new trial.

As recently discussed by this Court in *Hall v. State*, 226 Ga. App. 298 (1) (485 SE2d 800) (1997), the Supreme Court's decisions regarding the standard of proof for venue have been inherently inconsistent; "[i]f venue must be proved beyond a reasonable doubt, then slight evidence cannot possibly suffice." See also *Brinkworth v. State*, 222 Ga. App. 288, 290 (474 SE2d 9) (1996) (Ruffin, J., dissenting). Even applying the slight evidence standard in this case, however, venue was not proved.

In Count 2 of the indictment, Nihart was charged with "maliciously caus[ing] [J. M.], a child under 18 years of age, cruel and excessive mental pain by telling the child if she told anyone about the sexual acts and sexual advances of the accused, her mother would go to jail." J. M. testified that she was "pretty sure" Nihart made the offensive statement on the day she left Georgia, but she could not remember *where.*

The State also presented the testimony of K. W., a schoolmate J. M. called while in Georgia. K. W. testified that J. M. reported the sodomy incident to her, as well as Nihart's threat. Yet, K. W.'s testimony provided no information about where Nihart and J. M. were when the threat was made. The clearest details regarding the threat were presented by Detective Wrozier, who testified that "[J. M.] advised [her] that there was a threat made . . . at the train station" or en route to the station before J. M. and her mother left Georgia. Detective Wrozier, however, presented no testimony about the location of the train station, its proximity to Cobb County, or the route J. M. and her mother took to the station.[1] Compare *Withman v. State*, 210 Ga. App. 159, 160 (435 SE2d 519) (1993) (sufficient proof of venue for crime committed in moving car established by testimony that the route of travel included the county in which the defendant was tried).

The jury had no basis from which to conclude that the cruelty to children offense occurred in Cobb County. Only rank speculation supports venue in this case. Accordingly, the trial court erred in denying

---

[1] We note that although J. M. and her mother stayed with Nihart at his Cobb County home during their visit, their "route" to the train station could have commenced from a location other than Nihart's home.

Nihart's motion for a directed verdict of acquittal as to the cruelty to children charge. See *Sanders v. State,* 182 Ga. App. 581, 583 (2) (356 SE2d 537) (1987).

3. Nihart next argues that the trial court erred in not granting a mistrial after Detective Wrozier testified about his refusal to make a statement to police. This argument is without merit. As discussed in Division 1 (e), a mistrial was not necessary in this regard.

4. Following Nihart's conviction for aggravated sodomy, the trial court sentenced him to life imprisonment. Nihart now argues that his sentence violates the Eighth Amendment to the United States Constitution.

OCGA § 16-6-2 (b) provides that "[a] person convicted of the offense of aggravated sodomy shall be punished by imprisonment for life or by imprisonment for not less than one nor more than 20 years."[2] "Legislative enactments constitute the clearest and most objective evidence of how contemporary society views a particular punishment. Legislative discretion must be deferred to unless, under the circumstances, the sentence shocks the conscience." (Citations and punctuation omitted.) *Graham v. State,* 266 Ga. 543, 544 (4) (468 SE2d 363) (1996). See also *Brogdon v. State,* 220 Ga. App. 31, 35 (6) (467 SE2d 598) (1996). We find that Nihart's life sentence falls within the statutory limit and, given the circumstances of this case, does not shock the conscience. Given the sordid conduct of the victim's mother and the latter's paramour, along with such unimpeachable wickedness, we cannot say that the sentence imposed is cruel and inhumane. Accordingly, this enumeration has no merit.

5. Finally, Nihart claims that the trial court erred in sentencing Nihart to life imprisonment because OCGA § 16-6-2 (b) improperly provides two distinct maximum sentencing options: life imprisonment *or* twenty years incarceration. According to Nihart, the 20-year maximum abrogates the life imprisonment penalty. We disagree.

Although OCGA § 16-6-2 (b) vests broad discretion in the sentencing judge, it does not provide two maximum sentences, as Nihart contends. The maximum penalty for an aggravated sodomy conviction is life imprisonment. See *Waters v. State,* 248 Ga. 355, 369 (13) (283 SE2d 238) (1981). The statute also gives the trial court the option to impose, as an alternative, a determinable sentence between one and twenty years. OCGA § 16-6-2 (b). The trial court did not err in sentencing Nihart to life imprisonment. See *Corey v. State,* 216 Ga. App. 180, 181 (454 SE2d 154) (1995).

---

[2] During the 1997 session, the General Assembly amended OCGA § 16-6-2 (b), effective February 5, 1997, to provide that a person convicted of aggravated sodomy "shall be punished by imprisonment for life or by imprisonment for not less than ten nor more than 20 years." Ga. Laws 1997, p. 7, § 3. That amendment does not apply to this case.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 11, 1997.

Dennis C. O'Brien, Michael D. Reynolds, for appellant.
Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Rose L. Wing, Assistant District Attorneys, for appellee.