A02A1622. OGLE v. THE STATE.
(567 SE2d 700)

ELDRIDGE, Judge.

A Pierce County jury found Johnny Ray Ogle guilty of armed robbery for his participation in such act at Lairsey's Quick Change convenience store in Blackshear. Without challenging the sufficiency of the evidence against him, he appeals and claims that the trial

---

court erred in permitting the State to introduce State's Exhibit 2, a chrome plated .357 magnum handgun, because a proper chain of custody was not established; that the trial court erroneously admitted Ogle's statement to the police given in violation of *Miranda*;[1] that the trial court erred in considering his criminal record during sentencing without notice of aggravation being provided pursuant to OCGA § 17-10-2 (a); and that he received ineffective assistance of counsel at trial. Each of these alleged errors is meritless, and we affirm.

1. "A weapon may be admissible if the identification is sufficient to allow the jury to decide, under the evidence relative to identification, whether it is the identical weapon used by the defendant."[2] Here, a videotape of the incident captured by the convenience store's surveillance camera shows that, at approximately 8:30 p.m. on February 14, 1998, a chrome plated .357 magnum handgun with a wooden handle was used to perpetrate an armed robbery of Lairsey's Quick Change convenience store. The store clerk identified State's Exhibit 2 as looking like the gun that was used.

Ogle's co-defendant, Kenneth M. Logan, pled guilty to the offense. At Ogle's trial, he took the stand and testified that Ogle suggested the robbery of the Quick Change as an "easy score." Ogle drove Logan to the store and went inside himself to "scope it out." The store's surveillance camera recorded his visit. After he left, he gave Logan a ski mask, a .357 magnum chrome plated handgun with a wooden handle, and sent him into the Quick Change to rob it. Logan testified that following the robbery, they gave the gun to Teresa Ogle, appellant's wife. He identified State's Exhibit 2 as looking like the weapon he used.

Witness Brandi Stewart identified State's Exhibit 2 as Teresa Ogle's gun and testified that she had seen the weapon in Ogle's truck. Teresa Ogle testified that Ogle visited her residence at 7:30 p.m. on the incident date and her residence was located approximately four miles from the Quick Change; that she owns a chrome plated .357 magnum handgun with a wooden handle; that Ogle knew where the gun was located and had fired it several times; and that the weapon in the store videotape looked like her gun. She identified State's Exhibit 2 as looking like her gun. Teresa Ogle's mother and sister testified that they retrieved Teresa's .357 from her house and gave it to Teresa's father, Sam Wilson. The lead detective identified State's Exhibit 2 as the weapon he obtained from Wilson, Teresa's father, and thereafter gave to the prosecution.

We conclude this evidence was sufficient to establish a chain of

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] (Citations and punctuation omitted.) *Thomas v. State*, 268 Ga. 135, 139 (10) (485 SE2d 783) (1997).

custody as to State's Exhibit 2. The role such weapon played in the incident was for the jury to decide. "A weapon is generally admissible if it is similar to the one used in the crime even though it is not conclusively shown to be the same one."[3]

2. Next, Ogle claims a *Miranda* violation in the admission of a statement he made to a police officer. There was no such violation in this case. The single statement about which Ogle complains was not in any way the result of police questioning, but was a volunteered statement about his whereabouts at the time of the incident.[4]

> Crucial is whether a statement results from a custodial interrogation. If an accused volunteers a noncoerced statement then it is not necessary to invoke the tests which only apply to information obtained as a result of interrogation. This was recognized in *Miranda*, supra at 478, where it was held: "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."[5]

3. We also find no violation of OCGA § 17-10-2 (a) in the trial court's consideration of Ogle's apparently extensive criminal record when imposing sentence. Contrary to Ogle's contentions, "we have held specifically that the statute does not require written notice; all that is required is 'clear notice.'"[6] "Plea bargain negotiations can serve the same purpose as the giving of notice under OCGA § 17-10-2 (a). . . . When plea bargain negotiations are conducted, the defendant can be given 'clear notice' of what the State intends to rely upon in aggravation of sentencing at the guilty plea hearing."[7] "The important requirement [is] that the defendant be given an unmistakable advance warning that the prior convictions will be used against him at sentencing so that he will have enough time to rebut or explain any conviction record."[8]

In this case, Ogle's trial counsel testified at the motion for new trial hearing that she had notice of the State's intent to introduce his prior record in aggravation of sentence and that she had been given Ogle's Georgia Crime Information Center report which was "longer

---

[3] (Footnote omitted.) *Davis v. State*, 272 Ga. 327, 330 (4) (528 SE2d 800) (2000).

[4] Absent a *Miranda* violation, Ogle's statement was not limited to use as impeachment evidence only, as Ogle argues by brief. *Brown v. State*, 226 Ga. App. 140, 141-144 (486 SE2d 370) (1997).

[5] (Citation and punctuation omitted.) *Brenneman v. State*, 200 Ga. App. 111, 113 (1) (407 SE2d 93) (1991).

[6] (Citation omitted.) *Mullinax v. State*, 242 Ga. App. 561, 563 (2) (530 SE2d 255) (2000).

[7] *Martin v. State*, 207 Ga. App. 861, 862 (429 SE2d 332) (1993).

[8] (Punctuation and footnote omitted.) *Young v. State*, 245 Ga. App. 684, 686-687 (3) (538 SE2d 760) (2000).

than my arm." Defense counsel testified that the district attorney and she "went over it [criminal record] a good bit about his sentencing" during plea negotiations. The prosecutor confirmed that fact, stating, "We discussed it in plea negotiations prior to court. We [had] lengthy discussions as to what possible sentences were on this and why the state was offering what it did. He turned it down. We discussed it with her [defense counsel] what the chances of what he was gonna get if he went to trial based on his prior record." Accordingly, there is no factual basis for the instant claim of error.

4. Finally, Ogle claims he received ineffective assistance of counsel at trial. In order to prevail on such claim, Ogle must show that his counsel's performance was deficient and that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different.[9] Ogle has failed to meet this burden.

The primary basis for Ogle's claim of ineffective assistance is that his attorney failed to object to the trial court's consideration of his criminal record during sentencing because notice of aggravation was not served pursuant to OCGA § 17-10-2 (a). However, this claim of error has been decided adversely to Ogle in Division 3, supra. Ogle also contends his defense counsel failed to object to the admission of Ogle's statement to a police officer as a violation of *Miranda*. However, this claim has been decided adversely to Ogle in Division 2, supra. In addition, Ogle claims:

(a) That his attorney failed to file discovery motions. The record shows, however, that the district attorney had a complete open file policy, and Ogle's trial attorney testified that she had copies of everything in the prosecutor's file. In that regard, Ogle fails to state what more would have been obtained had discovery motions been filed;

(b) That his attorney failed to file a "reveal the deal" motion with regard to witness Stewart. However, it was anticipated that Stewart, one of Ogle's girlfriends, would testify favorably for Ogle, and his trial attorney made a strategic decision not to undermine such testimony by impeachment: "it wouldn't have done me any good to make my witness out to be a bad person for us, she was gonna be a witness for us." "[W]e refuse to second-guess counsel's strategic decision";[10] and

(c) That defense counsel failed to object when, as a part of the rule of sequestration invoked by Ogle, the trial court did not admonish the witnesses to refrain from talking to each other. In a demonstration of prejudice, we are directed to the fact that one of Ogle's

---

[9] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).
[10] *Nihart v. State*, 227 Ga. App. 272, 275 (1) (c) (488 SE2d 740) (1997).

girlfriends/witnesses apparently learned during the course of the trial through a discussion with Ogle's wife (also a witness) that Ogle had given another girlfriend/witness an engagement ring.

However, the admonition with regard to the rule of sequestration is that the witnesses not discuss the *case* or their testimonies thereon with each other; conversation unrelated to the indicted charges and/or testimony is not precluded by the rule.[11] Accordingly, regardless of whether the trial court gave the proper rule of sequestration admonishment as to witness communication, a conversation between witnesses about Ogle's impending nuptials — while perhaps placing Ogle in a personally precarious position — had nothing whatsoever to do, even tangentially, with the armed robbery at the Quick Change so as to evidence an abuse of sequestration. Such conversation, then, cannot demonstrate prejudice as a violation of the rule and provides no basis for an attorney objection thereon.

On further review, we find that Ogle's remaining contentions with regard to his trial attorney either are factually meritless or fail to show prejudice so as to "undermine confidence in the outcome" of the trial.[12] "Absent a showing of prejudice, no inquiry need be made into counsel's alleged deficiencies."[13] Accordingly, the trial court's conclusion that Ogle received effective assistance of counsel was not clearly erroneous.[14]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JUNE 19, 2002.

*Teresa G. Bowen*, for appellant.

*Richard E. Currie, District Attorney, George E. Barnhill, Assistant District Attorney*, for appellee.

---

[11] OCGA § 24-9-61; *O'Kelley v. State*, 175 Ga. App. 503, 504-505 (1) (333 SE2d 838) (1985).

[12] *Strickland v. Washington*, supra, 466 U. S. at 694 (III) (B).

[13] (Citation omitted.) *Eggleston v. State*, 247 Ga. App. 540, 543 (2) (544 SE2d 722) (2001).

[14] *Banks v. State*, 250 Ga. App. 728, 730 (2) (552 SE2d 903) (2001).