### A05A0090. JOWERS v. THE STATE.
(613 SE2d 14)

ELLINGTON, Judge.

A Muscogee County jury convicted Larry Jowers of armed robbery, OCGA § 16-8-41 (a). Jowers appeals, contending the trial court erred in overruling his objections to a police investigator's testimony and to the State's closing argument. He also claims he was denied the effective representation of counsel during sentencing.[1] Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows that just after midnight on December 19, 2000, Jowers and his brother-in-law, Junior Mack, went to a Columbus gas station. Jowers went into the small convenience store inside the station, while Mack stood near the door and held it open. Jowers approached the counter where the victim was working and demanded money from the victim. The victim saw that both men were pointing guns at him and he believed that they were going to shoot him as soon as he gave them the money. The victim grabbed his own weapon and shot Mack in the chest. Jowers immediately shot the victim in the throat and ran outside. Mack collapsed in a lot near the gas station and died. At the time of his death, Mack was wearing a black knit ski cap and latex gloves.

Jowers drove the van to Mack's house. According to Mrs. Mack, who was Jowers' sister, when Jowers arrived at her house, he looked "scared" and "in shock," was crying, and had blood on his clothing. Jowers told Mrs. Mack that her husband had been shot and was dead.

---

[1] We note that the State has failed to file a brief, in violation of Court of Appeals Rule 13.

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

Mrs. Mack got in the van and drove to the gas station. Jowers called his parents and, when they arrived at Mack's home, Jowers was dressed only in his underwear. His clothes were later discovered in the trunk of his father's car.

In the meantime, the victim, although seriously wounded, called 911 to report the robbery. When a police officer arrived, he noticed that there was only one car in the parking lot, which he believed belonged to the victim. The officer found Mack's body and saw the victim inside. Emergency medical personnel arrived at the scene within two minutes. As they approached the victim, however, a van almost hit them as the van's driver sped onto the lot. The woman driving the van was Mrs. Mack. When questioned about how she knew about Mack's death so quickly, Mrs. Mack initially told the officers she had received an anonymous phone call, but she later admitted that Jowers had come to her home and told her.

The officers went to Mack's home, where they found Jowers. The police took a custodial statement from Jowers, during which he initially claimed he was at his sister's house during the shooting. After officers told him of his sister's statements to police, however, Jowers changed his story and admitted that he knew Mack had been planning to rob the gas station that evening and that he went to a nearby location to watch it happen. Later, Jowers changed his story again and admitted that he was sitting in the van at the gas station during the robbery, although he denied that he had participated in the robbery. During a second custodial interview, Jowers again admitted that he was a passenger in the van, but added that he heard gunshots, saw Mack collapse, and tried to pick him up. When he could not lift Mack, he fled the scene. Notably, during his custodial statements to police, Jowers never mentioned that anyone else other than Mack was with him at the gas station. In contrast, however, Jowers testified at trial that a third individual named "Marcel" was with them at the station and helped Mack rob the victim. Jowers also testified that Marcel ran away after the robbery without coming back to the van.

Additional evidence presented at trial showed that, during the investigation of the robbery, police investigators found a knit ski mask inside the van, as well as a pair of latex gloves on the floorboard of the van. Further, a few months after the shooting, when the victim had partially recovered from his gunshot wound, he identified Jowers from a photograph as the man who had shot him during the robbery. The victim also identified Jowers at trial as the man who had shot him. Finally, the State presented two letters that Jowers had written to his sister while in jail awaiting trial, one of which included a list of questions about what occurred on the night of the robbery and instructions for her to send him the answers because "we need to get

our storys [sic] straight." The letter also stated that he might "just blame this" on another man he had met in jail.

1. Jowers contends the trial court erred when it overruled his objection to a police investigator's testimony and denied his motion for mistrial. The trial transcript shows that the State questioned a police investigator about the latex gloves he had discovered in the floor of the van. The State showed the investigator the gloves, which were packaged in a plastic bag that had a biohazard sticker attached. When asked about the sticker, the investigator stated that the bag was marked with the sticker because it "indicates [there might be] possible blood or other stuff from a human body" on the gloves. A moment later, the State asked if the gloves inside the plastic bag "appeared to have some blood or other bodily fluids on them." After the investigator answered, "Yes, sir," defense counsel objected on the basis that the investigator was not qualified to give his opinion that the substance on the gloves might be blood. Counsel also moved for a mistrial. The court overruled the objection. When the investigator testified a few moments later, however, that a biohazard sticker indicates that there may be blood or other fluids on the evidence and that officers need to use caution in handling it, counsel objected again on the same basis and the court sustained the objection. The court sua sponte gave a curative instruction to the jury, telling them to disregard that portion of the investigator's testimony and any "inferences concerning what may be or may appear to be on the gloves." Counsel objected to the instruction and renewed his motion for mistrial, which the court denied.

A few minutes later, when the State tendered the gloves into evidence, counsel objected, complaining for a third time about the presence of the biohazard sticker and the investigator's opinion that there might be blood on the gloves. Counsel asked the court to give the jury another instruction to guide them when they considered the gloves during deliberations. The trial court instructed the jury that the biohazard sticker on the plastic bag was placed there as a precaution for the safety of the investigators and that they should make no inferences from the presence of the sticker. Counsel did not object to this curative instruction, nor did he renew his motion for mistrial.

Under these circumstances, we find Jowers has failed to preserve his alleged error for appellate review. Jowers objected on the same issue three times, and the trial court gave the jury curative instructions on this issue, as requested. Following these instructions, Jowers was required to renew his motion for mistrial in order to preserve the issue. *Woodham v. State*, 263 Ga. 580, 582 (3) (439 SE2d 471) (1993). Since he failed to do so, appellate review of this issue is barred. Id. Further, even if the alleged error had not been waived and we

concluded the investigator's statement should not have been admitted, we would still find that any error in admitting the statement was harmless in light of the overwhelming direct and circumstantial evidence of Jowers' guilt.[3] *Swain v. State*, 268 Ga. App. 135, 137 (1) (601 SE2d 491) (2004).

2. Jowers contends the trial court erred in overruling his objection to the State's closing argument. The State argued as follows:

> A lot of the people that have these jobs don't have a lot of money. We need to do something to protect them. I mean nobody who is trying to earn a living for their family or for themselves should live in fear, nobody should ever ever have to go through what [the victim] has gone through. So there's a public policy at stake here too. You need to send a message to the people in Columbus, Georgia that we're not going to tolerate the brutal shootings. . . .

Jowers interrupted and objected on the basis that it was improper to argue to the jury that they have "a responsibility to send a message to anybody."[4] We disagree. "It is not improper for a prosecutor to appeal to the jury to convict for the safety of the community, or to stress the need for enforcement of the laws and to impress on the jury its responsibility in that regard." (Citation omitted.) *Davis v. State*, 266 Ga. 801, 804 (8) (471 SE2d 191) (1996). There was no error.

3. Jowers claims his trial counsel was ineffective for failing to object at sentencing to the State's references to a presentencing investigation report ("PSI"), which included information about his criminal history, and the court's consideration of the report. The record shows that, shortly after the trial ended, the court notified trial counsel and the State that it was going to order a PSI on Jowers.[5]

---

[3] Jowers claims admission of the investigator's testimony could not be harmless because the jury may have inferred from the testimony that Jowers wore the latex gloves during the robbery and discarded them afterward, and he argues this was the only evidence which showed he may have been involved in the robbery. The transcript shows, however, that Jowers admitted that he knew Mack was intending to rob the station before he went there, that he was at the station during the robbery, and that he knew the victim and Mack had been wounded, but did not call 911. Further, the victim twice identified Jowers as the man who shot him. Accordingly, Jowers' claim is not supported by the record.

[4] Although Jowers also argues on appeal that the State's closing argument violated the prohibition against invoking the "golden rule," he failed to object on this basis at trial. See *Marshall v. State*, 276 Ga. 854, 857 (5) (583 SE2d 884) (2003) (an impermissible "golden rule" argument asks jurors to place themselves in the victim's position). Therefore, this argument was waived. *Garmon v. State*, 265 Ga. App. 622, 626 (3) (a) (594 SE2d 779) (2004).

[5] Although Jowers contends on appeal that trial counsel had no notice prior to the sentencing hearing that the trial court would consider his criminal history, appellate counsel admitted during the motion for new trial hearing that trial counsel had such notice when the court announced after trial that it would order a PSI on Jowers. Further, trial counsel reviewed

The court conducted a sentencing hearing three months later, after it had received the results of the PSI. At the hearing, the State told the court it did not have any evidence of a prior record to use in aggravation for sentencing purposes. Trial counsel, however, stated that he had looked at the PSI and knew that Jowers had a record of "juvenile problems," but argued that Jowers had stayed out of trouble for a couple of years and was employed when the armed robbery occurred. He also stressed that Jowers had no felony record.

After the State and counsel had had the chance to make their arguments regarding sentencing, the court inquired whether Jowers had a prior criminal record. The State reminded the court that Jowers had no record as an adult but had "an extensive juvenile record, [but] not for violent crimes." Although the State did not specify what crimes were included in Jowers' juvenile record, it stated that Jowers had been sentenced to boot camp and a diversion center, that he had been to juvenile court "time after time," and that he had failed to avail himself of opportunities to "get his life in order." The State also emphasized the seriousness of the crime in this case, including the fact that Mack had been killed and that nothing could be done to make the severely injured victim's life "right again." The trial court sentenced Jowers to 20 years, 15 to serve.[6]

At the hearing on Jowers' motion for new trial, appellate counsel argued that trial counsel was ineffective for failing to object to the State's references to Jowers' juvenile record. Trial counsel testified that he decided not to object to the State's argument because the court had ordered and reviewed the PSI and, therefore, already knew about Jowers' record before the sentencing hearing. According to trial counsel, "I was trying to just work out the best situation I could for him. I knew the Court was aware of it, and I could see no point in really trying to hide it from the Court." He also explained that he had attempted to mitigate the effect of Jowers' juvenile record by emphasizing to the court that Jowers had stayed out of trouble for two years before the armed robbery. The trial court subsequently issued an order denying Jowers' motion for new trial, finding that Jowers was well represented at trial and that trial counsel's failure to object to the introduction of Jowers' juvenile record during sentencing did not amount to ineffective assistance of counsel.

---

the PSI before the hearing and had the opportunity to explain or rebut its contents. See *Munsford v. State*, 235 Ga. 38, 45 (218 SE2d 792) (1975) (because the PSI report is not evidence in aggravation or mitigation of sentencing, notice to trial counsel prior to the sentencing hearing is not required, although counsel should have the opportunity to explain or rebut information in the report).

[6] The minimum sentence for armed robbery is ten years without parole. OCGA §§ 16-8-41 (b); 17-10-6.1.

In order to prevail on his ineffective assistance claim, Jowers must show that, but for trial counsel's failure to object to the State's references to his juvenile record and the court's consideration of the record prior to sentencing, the outcome would have been different, in other words, the trial court would have given him a shorter sentence. See *Ogle v. State*, 256 Ga. App. 26, 29 (4) (567 SE2d 700) (2002) (defendant carries the burden of showing that the outcome of his trial would have been different but for counsel's unprofessional errors). Jowers has failed to meet this burden.

(a) "We have held that trial courts are permitted to consider criminal histories contained in presentence reports when deciding whether to suspend or probate a sentence, although such reports cannot be used to determine the length of a sentence." (Footnote omitted.) *Adams v. State*, 263 Ga. App. 694, 696 (2) (589 SE2d 269) (2003). It follows that, because the trial court had a permissible reason to consider the PSI prior to sentencing, trial counsel had no basis upon which to raise a general objection to consideration of the PSI by the court. Therefore, his failure to object does not amount to ineffective assistance. See *Whited v. State*, 258 Ga. App. 195, 199 (5) (573 SE2d 449) (2002) (failure to make a meritless objection is not ineffective assistance).

(b) Jowers' PSI report is not in the record on appeal. It appears, however, that the State's references to Jowers' juvenile record were merely cumulative of the information contained in the PSI of which the trial court was already aware. Accordingly, Jowers is unable to show that he was prejudiced by trial counsel's failure to object to the State's references to his record during sentencing. See *Darnell v. State*, 257 Ga. App. 555, 559 (7) (c) (571 SE2d 547) (2002) (failure to object to evidence that is merely cumulative of other admissible evidence does not constitute ineffective assistance).

(c) Finally, Jowers has failed to demonstrate that he was prejudiced by the court's consideration of his juvenile record in the PSI, in other words, that the trial court used the information in the PSI to improperly lengthen Jowers' sentence. Although it is undisputed that the trial court reviewed the PSI report before the hearing, there is no evidence that the trial court relied upon it in calculating Jowers' sentence. As previously noted, the PSI report is not in the record on appeal. "Thus, we are unable to ascertain what the report recommended, much less whether the trial court adhered to the recommendation. The burden is on [Jowers] to show error affirmatively from the record, and we will not presume error where the record is silent." (Punctuation and footnote omitted.) *Whited v. State*, 258 Ga. App. at 199 (6). In this case, the trial court had to determine the appropriate sentence for a defendant in an armed robbery that resulted in the near-fatal wounding of the victim and the death of an accomplice.

Given the egregious nature of this crime and its tragic results, Jowers' mere speculation that the trial court may have relied upon the PSI report in deciding to sentence him to more than the ten-year minimum term is insufficient to meet his burden of proving trial counsel was ineffective for failing to object to the report during sentencing. Id. at 200 (6). We find the trial court did not err in denying Jowers' motion for new trial based upon a claim of ineffective assistance of counsel.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 28, 2005 —
RECONSIDERATION DENIED MARCH 31, 2005.

*William J. Mason*, for appellant.
*J. Gray Conger, District Attorney, William D. Kelly, Assistant District Attorney*, for appellee.