## A97A0724. SKIDMORE v. THE STATE.
(485 SE2d 540)

BIRDSONG, Presiding Judge.

Kevin Skidmore, a juvenile, was charged with armed robbery as an adult pursuant to OCGA § 15-11-5 (b) (2) (A) (vii) for his part in the holdup of a Clarkston convenience store. He was convicted by a jury, and sentenced to ten years in prison. On appeal he challenges the trial court's refusal to sever his trial from that of his co-defendant and its admission of his custodial statements. He also contends OCGA § 15-11-5 (b) (2) (A) is unconstitutional and was discriminatorily applied to black males such as he. *Held*:

1. In this non-death penalty case, the trial court exercised its discretion and denied Skidmore's motion to sever his trial from that of his co-defendant, Harrison, whom the jury acquitted. We will not disturb its decision absent an abuse of discretion. *Smith v. State*, 267 Ga. 372, 373 (2) (477 SE2d 827).

This case involved only two defendants. The trial court instructed the jury to consider the guilt or innocence of each defendant separately, and the jury acquitted Skidmore's co-defendant. Therefore, we find no danger that the number of defendants was so great as to cause confusion of the evidence and the law. See *Owen v. State*, 266 Ga. 312, 314 (2) (467 SE2d 325). Although a custodial statement Harrison made was introduced at trial, the trial court cautioned the jury to consider that statement only against Harrison. See *Story v. State*, 194 Ga. App. 187, 188 (1) (390 SE2d 96). Harrison testified that Skidmore forced him to commit the armed robbery. However, antagonistic defenses alone do not require severance, and Skidmore fails to show how a separate trial would have prevented the State from introducing Harrison's testimony. See *Williams v. State*, 213 Ga. App. 458, 459-460 (2) (444 SE2d 831).

Furthermore, the cashier identified Skidmore and Harrison as her assailants, and the State introduced in evidence Skidmore's statement admitting he participated in the holdup. Considering such overwhelming independent evidence against Skidmore, we find the trial court's denial of Skidmore's motion to sever did not prejudice him to the point of denying him due process of law. See *Williams*,

supra; *Smith*, supra at 373 (2).

2. Skidmore claims the trial court erred by admitting two custodial statements he made to police. As he acknowledges, any alleged violation by police of the juvenile arrest procedures outlined in OCGA § 15-11-19 (a) does not render the custodial statements inadmissible; rather, the issue is whether Skidmore made these statements after freely, knowingly, and voluntarily waiving his *Miranda* rights. *Lattimore v. State*, 265 Ga. 102, 104 (2) (b) (454 SE2d 474).

The factors applied by a trial court in determining whether a juvenile's custodial statements were knowingly, freely, and voluntarily given are: the age and education of the accused; his knowledge of the charges against him and of his right to consult with an attorney; whether he was allowed to consult with relatives; whether he was interrogated before or after being formally charged; the method and length of the interrogation; whether the juvenile refused to give a voluntary statement on prior occasions; and whether the juvenile later repudiated the custodial statement. *McKoon v. State*, 266 Ga. 149, 150 (2) (465 SE2d 272).

Testimony at the *Jackson-Denno* hearing and at trial revealed that an officer took Skidmore into custody and informed him he was a suspect in the armed robbery of a store. Skidmore's mother joined him at the Clarkston police station and was present when police read Skidmore his rights. Skidmore filled in blanks on a form styled "Advice of Miranda Warnings/Rights to Juveniles," indicating that he was sixteen years old and in the tenth grade. The form detailed, in simple language, each of Skidmore's *Miranda* rights. He and his mother signed the form twice, acknowledging that he understood each of his rights, that he was willing to waive his rights and answer questions, and that no promises or threats had been made to him. Skidmore signed the form at 2:51 p.m. and wrote out a statement which he and his mother signed. An officer signed as a witness to the statement at 3:17 p.m.

After he gave this first statement, Skidmore left the police department with his mother but returned with her at 4:09 p.m. He and his mother again signed juvenile *Miranda* waiver forms, and he wrote out another statement, which he and his mother signed and the officer witnessed at 4:34 p.m.

This evidence supports the trial court's finding that Skidmore understood his rights but freely and voluntarily waived them and made these statements. The court was authorized to reject Skidmore's contentions that the police told his mother he did not need a lawyer and misled him into believing he would not face charges as an adult, as the record does not support those contentions. See *Yorker v. State*, 266 Ga. 615, 617 (4) (469 SE2d 158); *McKoon*, supra at 151 (2).

3. In his remaining enumeration of error, Skidmore challenges on several grounds the constitutionality of the statute which allowed him to be tried as an adult in superior court, OCGA § 15-11-5 (b) (2) (A) (vii).

(a) This Court has no power to determine Skidmore's challenges to the face of this statute on the grounds that it violates the federal and state constitutional principles of separation of powers and equal protection or the constitutional prohibition against cruel and unusual punishment. However, in *Bishop v. State*, 265 Ga. 821 (462 SE2d 716), the Supreme Court upheld the statute as constitutional in the face of challenges made on the first two grounds.

Although this statute does not prescribe a penalty for armed robbery, the Supreme Court has held that even a life sentence for armed robbery is not "cruel and unusual" punishment. *Mydell v. State*, 238 Ga. 450 (2) (233 SE2d 199). "[A] sentence which is not otherwise cruel and unusual does not become so simply because it is 'mandatory.' [Cit.]" *Ortiz v. State*, 266 Ga. 752, 753 (2) (a) (470 SE2d 874).

(b) Skidmore contends the statute was unconstitutionally applied to him and other black males. At the hearing on this challenge, Skidmore's counsel admitted the statistics he provided the court showed no dissimilar treatment between white and black juvenile defendants charged as adults under OCGA § 15-11-5 (b) (2) (A). However, Skidmore contends that young black males are being discriminated against at the time of arrest, and young white males are apparently being charged with lesser crimes. He produced no evidence to support these allegations, and the statistics he did produce do not show any purposeful discrimination. This enumeration is, therefore, without merit. See *Stephens v. State*, 265 Ga. 356, 357 (1) (456 SE2d 560) (defendant required to prove purposeful discrimination, which will not be inferred from statistics showing disparate impact).

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED MARCH 28, 1997 —
RECONSIDERATION DENIED APRIL 9, 1997 —

Before Judge Mallis.

*Devon A. Orland, Letitia B. Delan*, for appellant.

*J. Tom Morgan*, District Attorney, *Barbara B. Conroy, Benjamin M. First*, Assistant District Attorneys, for appellee.