A97A1821. McWHORTER v. THE STATE.
(495 SE2d 139)

Judge Harold R. Banke.

Marvis McWhorter was convicted of aggravated assault. He enumerates three errors on appeal.

This case arose during the course of a hot summer evening while the victim and some acquaintances "hung out" behind an apartment building, watching a dice game. *Price v. State*, 222 Ga. App. 655, 657 (2) (475 SE2d 692) (1996) (evidence on appeal must be viewed in a light most favorable to the verdict). McWhorter drove up and ordered one of the players to "leave everything on the ground." He subsequently jumped out of the car holding a gun with a red laser light attached to it in his hand.[1] After warning the victim not to "be putting his business in the street," McWhorter pointed the gun at the victim's head, shining the laser light on the victim's face. At that point, the victim's sister jumped in front of the gun and talked to McWhorter until he got back in his car and left. *Held*:

1. McWhorter claims the trial court's interpretation of OCGA § 17-16-4 requires reversal. In a conversation with the arresting officer before McWhorter testified, defense counsel learned of the existence of a number of police reports, including McWhorter's in-

---

[1] The testimony pertaining to the number of times McWhorter came and left the area during this time is conflicting.

custody statement, which the State had not previously provided her, although her client had "opted in" under OCGA § 17-16-2. She convinced the officer to allow her to copy the material. After learning of this, the prosecutor claimed that he had not obtained this material either and successfully asked the court to require McWhorter to provide the State with it. McWhorter claims, inter alia, that requiring him to provide this material offended due process and his rights to effective assistance of counsel and against self-incrimination.

Pretermitting McWhorter's arguments, because McWhorter had opted in to the reciprocal discovery provisions and the State in effect already had the material in its possession or certainly could have obtained the materials from the officer just as McWhorter did, we fail to see how he was harmed by this ruling. See *Johnson v. State*, 194 Ga. App. 501, 502 (3) (391 SE2d 132) (1990). Nor does the record reveal that McWhorter raised his constitutional arguments in the trial court. *Allen v. State*, 224 Ga. App. 324, 326 (5) (480 SE2d 328) (1997).

2. McWhorter claims reversal is required because the trial court permitted the State to use McWhorter's in-custody statements at trial in violation of the reciprocal discovery statute. OCGA § 17-16-4 (a) (1) required the State to provide McWhorter "any relevant written or recorded statements made by the defendant." We decline to absolve the State from its responsibility to comply with this provision when the statement was known to the arresting officer and the record discloses no reason why it was not made available to the State's attorney prior to trial. See *Moon v. State*, 208 Ga. App. 540, 541 (1) (b) (431 SE2d 128) (1993).

However, the testimony of the victim and his sister that an angry McWhorter pointed a gun at the victim's head, rendered the error harmless. Id. at 542 (1). The evidence of aggravated assault was more than sufficient to satisfy *Jackson v. Virginia*, 443 U. S. 307, 319-320 (99 SC 2781, 61 LE2d 560) (1979).

Moreover, OCGA § 17-16-6 provides a number of alternative remedies for failure to comply with the discovery requirements, including simply ordering the State to permit the discovery. Because the court was authorized to remedy this matter by requiring disclosure and McWhorter obtained the statement before the State and has not alleged bad faith or made a showing of prejudice, we decline to find that the trial court abused its discretion by allowing the State to use McWhorter's statement. See *Bell v. State*, 224 Ga. App. 191, 192 (480 SE2d 241) (1996). Nor has McWhorter demonstrated how the State's violation of OCGA § 17-16-4 (a) harmed him.[2]

---

[2] McWhorter's claim that he might have chosen not to testify but for the late receipt of

3. McWhorter raises several arguments challenging the trial court's admission of the testimony recounting his out-of-court statements. The impeaching testimony was provided in rebuttal by the detective who took McWhorter's statement.

First, McWhorter argues that the State failed to show compliance with *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Insofar as the statement was introduced in rebuttal, after McWhorter denied making certain statements about participants in the game, and he has not challenged the jury instruction on the use of this testimony, this ground does not require reversal. *Byars v. State*, 198 Ga. App. 793, 794 (2) (403 SE2d 82) (1991); see *Brown v. State*, 226 Ga. App. 140, 141 (486 SE2d 370) (1997).

McWhorter further maintains that the State failed to show, over objection, that his statement was voluntary. The State's use of an involuntary statement for any purpose violates due process. *Fain v. State*, 165 Ga. App. 188, 190 (6) (300 SE2d 197) (1983). Once McWhorter raised the issue of involuntariness, he was entitled to a determination on that matter by the trial court before the statement could properly be used (but not a separate hearing under *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964)). *Fain*, 165 Ga. App. at 190 (6). The trial court made no such determination on the voluntariness of the statement. Nor are we persuaded by the State's contention that the arresting and investigating officers' statements on the issue satisfy that requirement. Accordingly, we must remand for such a determination. Id. Should the trial court find the statement was not voluntary, a new trial is required. Id.

McWhorter argues that the State failed to establish a basis for impeachment because he testified that he did not recall talking to the investigator who took his in-custody statement. Although McWhorter said he did not recall talking to the investigator, the record shows that he also specifically denied making the statements used to impeach him. Moreover, this issue does not appear to have been raised at trial. *Allen*, 224 Ga. App. at 326 (5). Nor was McWhorter's contention that the State failed to follow OCGA § 24-9-82 with sufficient particularity. Id.

Finally, McWhorter argues that the law enforcement officer's testimony regarding several specific in-custody statements he made was beyond the scope of impeachment. However, the record shows

---

the statement is undermined by defense counsel's comment at trial that she obtained the documents on the morning of trial (and certainly before McWhorter took the stand). She stated she had forgotten whether she had opted into the reciprocal discovery plan and therefore was not upset she had not received them sooner. It follows that she was operating at that time under the assumption that the State possessed the in-custody statement, a fact which subverts any claim of unfair surprise caused by the State's use of McWhorter's statement in rebuttal. See *Bertholf v. State*, 224 Ga. App. 831, 832 (1) (482 SE2d 469) (1997).

that the State asked McWhorter about these statements. McWhorter specifically denied saying that (1) he was "rolling dice with the punk mother f.....rs behind the building"; (2) "that punk 'Nard didn't want to put no money down"; and (3) "that 'Nard was a m.....r f....r." He also denied that anyone was in the car with him. We fail to see how introduction of the prior in-custody statements directly contradicting these assertions went beyond the scope of impeachment.

*Case remanded for further proceedings. Ruffin and Eldridge, JJ., concur.*

DECIDED DECEMBER 17, 1997.

*Rosemary M. Hathaway*, for appellant.
*Harry N. Gordon, District Attorney, Henry R. Thompson, Assistant District Attorney*, for appellee.