### A98A2308. McCOY v. THE STATE.
(508 SE2d 224)

ELDRIDGE, Judge.

The defendant, Lawrence Charles McCoy, was convicted by a jury for the offense of armed robbery. He appeals from the denial of his motion for new trial.

In the light most favorable to the verdict, the evidence at trial showed the following: On December 29, 1995, Jared Daniels and his girlfriend, Jessica Crenshaw, stopped at Holiday Market in Rochelle. Crenshaw, who was driving, went into the store, while Daniels

---

stayed in the car. The defendant was sitting in a red Chevrolet S-10 pickup truck, which was parked next to the passenger side of Crenshaw's car. The other two occupants of the pickup truck had gone into Holiday Market.

Daniels heard loud music coming from the pickup and looked over. Daniels testified that he thought the defendant called him by name, and he rolled down his window. During the conversation that ensued, Daniels looked down to check his beeper. The defendant asked Daniels if he had a beeper, and Daniels responded in the affirmative. When Daniels looked back up, the defendant was standing by the passenger door of Crenshaw's car pointing a gun at Daniels' head.

The defendant demanded at gunpoint that Daniels give him his beeper and, with the gun pointed at Daniels' head, asked Daniels if he was afraid to die. After Daniels gave the defendant his beeper, the defendant told Daniels that if he called the police he would kill him.

Crenshaw testified that the two occupants of the red pickup who had gone into Holiday Market were in the checkout line in front of her. When Crenshaw exited the store, Daniels had locked the doors to her car, appeared to be very upset and scared, and kept telling her to hurry and get into the car. As Crenshaw was getting into the car, the red pickup truck exited the parking lot. Daniels told Crenshaw his beeper had been taken at gunpoint.

Daniels testified that when the number on his beeper was called, the caller would get a message that contained his name. Therefore, Daniels and Crenshaw went to "Rochelle Place," and Daniels used the telephone to remove his name from the message. Crenshaw then took Daniels home. When Daniels' parents got home, Daniels told them what had occurred and his parents called the police and reported the incident.

1. The defendant alleges that the trial court erred in allowing his custodial statement to be entered into evidence because it was not made freely. The defendant maintains that the statement was involuntary because he was a juvenile and intoxicated.

(a) The question of whether a defendant waives his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and makes a voluntary and knowing statement depends on the totality of the circumstances. *Reinhardt v. State*, 263 Ga. 113, 115 (428 SE2d 333) (1993). When the accused is a juvenile, the totality of the circumstances is determined through an analysis of nine factors: (1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge and the nature of the accused's rights to consult with an attorney and to remain silent; (4) whether the accused was held incommunicado or allowed to consult with relatives, friends, or an attorney; (5) whether the accused was

interrogated before or after formal charges had been filed; (6) methods used in interrogation; (7) length of interrogation; (8) whether or not the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extrajudicial statement at a later date. *State v. McBride*, 261 Ga. 60 (401 SE2d 484) (1991).

Georgia Bureau of Investigation ("GBI") Agent Mark Pro interviewed the defendant at the Fitzgerald Police Department at 9:50 a.m. on December 30, 1995. The defendant had been placed under arrest the previous evening because he was intoxicated. Agent Pro testified that, at the time he interviewed the defendant, he was not sure why the defendant had been arrested, but that the defendant indicated he thought he had been arrested because he was intoxicated the night before. Agent Pro testified that, at the time of the interview, the defendant stated he was not under the influence of alcohol or drugs and, from his observations, the defendant did not appear to be under the influence of drugs or alcohol. The defendant did not show any outward signs that he was intoxicated; his speech was not slurred, and he did not have any difficulty walking.

The interview took place away from the jail portion of the police department in the investigator's office. GBI Special Agent Robert Young, who was receiving field training, was present. Agent Pro advised the defendant of his *Miranda* rights. Agent Pro testified that he placed the waiver of rights form in front of the defendant so that he could read along and, as he read each of the *Miranda* rights to the defendant, he stopped and asked the defendant if he understood. Each time the defendant indicated he understood a specific right, Agent Pro put a check by that right to indicate that the defendant understood. Agent Pro testified that it appeared to him that the defendant fully understood his rights.

In order to ascertain if the defendant could read, Agent Pro had the defendant read to him from the waiver sheet. Agent Pro testified that the defendant did not have any problem reading. Agent Pro further testified that he did not offer the defendant any hope of benefit in an attempt to get him to make a statement and that no one threatened or coerced the defendant into making a statement.

After Agent Pro completed the waiver of rights form, he asked the defendant if he wanted to talk about the armed robbery which occurred at Holiday Market, located at 327 Highway 280. The defendant stated that he was willing to talk and signed the waiver of rights form. The defendant did not request a lawyer, his parents, or any other family member to be present at any time. Agent Pro further testified that the defendant was "cooperative" and "open" during the entire interview and that the interview was completed with "no conflict at all."

The defendant stated that he had completed the eighth grade. The defendant, who was 16 years old, stated that he was 17 years of age. Agent Pro testified that he did not find out the defendant's true age until three or four days after the interview. Agent Pro testified that, based on the defendant's physical appearance (the defendant is six feet two inches in height and weighs one hundred ninety pounds), he had no reason to believe the defendant was not truthful about his age.[1]

"The question of whether or not a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted unless such determination is clearly erroneous." (Citations and punctuation omitted.) *In the Interest of R. T. D.*, 196 Ga. App. 852, 853 (397 SE2d 189) (1990). Considering the totality of the circumstances in this case through an analysis of the nine-factor test, we find that the trial court did not err in finding the defendant's statement to be voluntary and, therefore, admissible.

(b) Even if the defendant had not freely and voluntarily given a statement after making a knowing and intelligent waiver of his rights under *Miranda*, there was no reversible error in the admission of the defendant's in-custody statement. In his previous in-custody statement, the defendant stated "Jessica's boyfriend's pager went off and I asked if I could see it. I got out of my truck to grab it from him. I told him that I was not going to give it back to him. I told him that if he told anyone, that I would whip his ass." At trial, the defendant testified that "I noticed that his pager went off and I asked to see it, and he let me have a look and I said let me see your pager a minute and I'll give it back to you, and so he handed it to me and I went and got back inside the truck and I said have a nice day, you ain't getting it back."

The defendant's testimony at trial was identical to his previous in-custody statement with the exception of his description of grabbing or being given the beeper. At both trial and in his statement the defendant denied having a gun, but admitted taking the beeper from Daniels and refusing to give it back. To the extent the defendant's statement was merely cumulative of his trial testimony, there is no reasonable possibility that the admission of the defendant's statement might have contributed to the verdict. Therefore, the introduction by the State of that portion of the defendant's statement, if error, was harmless beyond a reasonable doubt, especially in light of the overwhelming evidence in this case. See *Williams v. State*, 159 Ga.

---

[1] The arrest report, which the GBI did not have at the interrogation, shows the defendant's date of birth as being June 12, 1979, which would have made him sixteen years and six months old at the time of the interview.

App. 508 (284 SE2d 27) (1981); see also *Little v. State*, 230 Ga. App. 803 (498 SE2d 284) (1998); *LaRue v. State*, 137 Ga. App. 762, 764 (224 SE2d 837) (1976).

(c) Further, after defendant's testimony, the trial court, at the defendant's request, charged the jury on armed robbery, robbery by intimidation, and theft by taking. To the extent there was inconsistency in the defendant's previous statement and his testimony at trial as to how he gained possession of the beeper, that portion of his previous statement would have been admissible at trial for the purpose of impeachment to show a prior inconsistent statement. See *Mack v. State*, 209 Ga. App. 104 (432 SE2d 680) (1993); *Cribbs v. State*, 204 Ga. App. 109 (418 SE2d 405) (1992).[2]

In light of the overwhelming evidence in this case, there is no reasonable possibility that the admission of the defendant's statement might have contributed to the verdict. The admission of the defendant's in-custody statement, if error, was harmless beyond a reasonable doubt. See *Little v. State*, supra.

2. In three enumerations of error, the defendant challenges the sufficiency of the evidence. When reviewing a conviction, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Cit.]" (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). While the defendant testified that he did not have a gun, Daniels was unequivocal in his testimony that the defendant pointed a gun at him and demanded his beeper. "[I]t is the function of the jury, and not this Court, to resolve conflicts in the evidence. This Court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses." (Citation and punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 195 (491 SE2d 387) (1997). Viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find the defendant guilty of armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, supra.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 26, 1998.

*David E. Morgan III*, for appellant.

---

[2] Under such circumstances, where the statement was introduced for purposes of impeachment only, it would be the duty of the trial court to give appropriate limiting instructions. See *Jones v. State*, 243 Ga. 820, 826-827 (256 SE2d 907) (1979); *Tew v. State*, 179 Ga. App. 369 (346 SE2d 833) (1986).

*John C. Pridgen, District Attorney, Denise D. Fachini, Assistant District Attorney*, for appellee.