A99A0313. ROOKS v. THE STATE.
A99A0355. MONROE v. THE STATE.
(518 SE2d 179)

POPE, Presiding Judge.

Harold Rooks appeals from his convictions for armed robbery, aggravated assault, attempt to elude, reckless driving, speeding, and driving with no license or proof of insurance. Frederick Monroe appeals from his convictions for armed robbery and aggravated assault.

On or about August 24, 1995, four men arrived at the Corral Food Store in Milledgeville, Georgia. At around 3:30 a.m., Lee Wilkins, who was dozing outside the store, was awakened by a man ordering him out of the car and pointing a shotgun in his face. Two other men, at least one of whom held a pistol, were also present. The men demanded that Wilkins go behind the store. Wilkins refused and the men forced him into the store, where two clerks were inside. Three men, one armed with a shotgun and two armed with pistols, then demanded money. After the two clerks handed the money over, the men backed out of the store and took off. Rooks and Monroe were identified at trial as two of the gunmen in the store. The store employees then called 911 to report the crime. A short time later a shotgun blast was fired through the store's window. After the crime was reported, the police observed a burgundy Ford Explorer exiting a parking lot from behind the store. A multi-county, high-speed chase ensued and ended only when the car crashed in Macon, Georgia, killing two of the passengers. Rooks and Monroe were pulled from the wreckage alive.

*Case No. A99A0313*

1. In his sole enumeration, Rooks asserts that the trial court erred in admitting an audiotape of the 911 call made from the store because the defense had not been allowed to listen to the tape at least ten days before trial as required by OCGA § 17-16-4 (a) (3).[1] When the state tried to introduce the tape at trial, counsel for both Rooks and Monroe objected stating that they did not recall seeing the tape during the prior discovery exchange with the state. The prosecutor, on the other hand, recalled showing the tape to Rooks' and Monroe's counsel at the discovery exchange and discussing its contents. Monroe's counsel conceded that the tape could have been there, noting that the prosecution had been "very truthful with me and very open with me. I just simply don't remember it." Defendants' counsel listened to the tape shortly before the trial began.

Assuming arguendo that the state failed to comply with the discovery statute, we find no error in the admission of the tape. The discovery statute grants broad discretion to the trial court in remedying any violations of its provisions. *Marshall v. State*, 230 Ga. App. 116, 118 (2) (495 SE2d 585) (1998).

> [T]he court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

OCGA § 17-16-6.

> In enacting this statute, the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial.

(Citation and punctuation omitted.) *Peeples v. State*, 234 Ga. App. 454, 456 (2) (507 SE2d 197) (1998).

In this instance, although Rooks now argues he was prejudiced

---

[1] Rooks claims coverage under the discovery statute pursuant to OCGA § 17-16-2 (a), which provides that in multidefendant cases, whenever one defendant elects to proceed under the statute, it applies to all defendants unless a severance is granted. Monroe filed a formal election to proceed under the discovery statute, which then applied to his co-defendant Rooks.

because he was not prepared to address the discrepancies between the 911 tape and the victims' testimony at trial, he never asserted this argument before the trial court and never requested a continuance to allow further preparation. The defendants objected only that the state had failed to produce the tape earlier. The trial judge then ascertained that counsel had had the opportunity to listen to the tape before allowing its admission into evidence. We find that the trial court acted within its discretion in allowing the 911 tape into evidence and that no abuse occurred. See *McWhorter v. State*, 229 Ga. App. 875, 876 (2) (495 SE2d 139) (1997); *Hammitt v. State*, 225 Ga. App. 21, 22 (482 SE2d 437) (1997) (physical precedent only).

*Case No. A99A0355*

2. In his first enumeration, Monroe argues his conviction for aggravated assault merged into his armed robbery convictions because the same evidence was used to convict him of both charges.

The offenses of aggravated assault and armed robbery do not merge as a matter of law. *Brantley v. State*, 230 Ga. App. 651, 652 (2) (497 SE2d 399) (1998). However, the offenses may merge as a matter of fact, and

> "[t]he key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge."

(Citation omitted.) *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).

Monroe was convicted on two counts of armed robbery, each count relating to one of the two clerks in the store. His conviction for aggravated assault, however, was based upon a charge that he had assaulted Lee Wilkins with a firearm. The jury was unable to reach a decision on additional aggravated assault charges against Monroe as to the two store clerks, and a mistrial was declared as to those counts.

"If the pointing of a firearm places the victim in reasonable apprehension of immediate violent injury, the felony of aggravated assault has occurred. [Cits.]" (Punctuation omitted.) *Dunagan v. State*, 269 Ga. 590, 593 (2) (b) (502 SE2d 726) (1998). The evidence at trial supported a finding that the offense of aggravated assault was complete when Lee Wilkins was accosted at gunpoint in his truck, before the defendants even entered the store. The armed robbery of the two clerks then occurred after the men entered the store. Alter-

natively, the jury could have found that the aggravated assault occurred when the shotgun blast was fired through the window of the store, after the completion of the robbery. Either way, " 'the underlying facts used to prove each offense are different and the evidence showed that one crime was complete before the other occurred.' " (Citations omitted.) *Reeves v. State*, 233 Ga. App. at 805. Accordingly, no merger occurred. See id.; *Guild v. State*, 234 Ga. App. 862, 865 (3) (508 SE2d 231) (1998).

3. Monroe next asserts that the trial court erred when it allowed a statement made by his co-defendant Rooks into evidence in violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Rooks' original statement directly implicated Monroe in the crimes. At trial, however, the only evidence of the statement came through the testimony of the investigating officer. The officer testified that Rooks told him that he was in the Ford Explorer that night with Monroe and the two other men when they stopped at the Corral Food Store. That was the only reference to Monroe by name. The officer then testified, "Mr. Rooks said he went into the store first and that the other men came in after he did. He said they had guns and that they began robbing the store." The testimony then proceeded with continued references to "they" and "the other men." Rooks did not testify.

> Every defendant has the right under the Sixth Amendment to be confronted with the witnesses against him. *Bruton* holds that the right of confrontation is violated when several co-defendants are all tried jointly, one defendant's confession is used to implicate another defendant in the crime, and the confessor does not take the stand. The result is that the accusing co-defendant cannot be cross-examined. . . .

(Citation and punctuation omitted.) *Hodges v. State*, 229 Ga. App. 475, 477 (2) (494 SE2d 223) (1997).

In a recent opinion, the U. S. Supreme Court further explained the protection offered by the Confrontation Clause. It stated that the Confrontation Clause is not violated by "statements that [do] not refer directly to the defendant himself and which [become] incriminating 'only when linked with evidence introduced later at trial.' " *Gray v. Maryland*, 523 U. S. 185 (118 SC 1151, 1157, 140 LE2d 294) (1998). However, "statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial" do fall within the protection of *Bruton*. Id.

The Supreme Court of Georgia, "[f]ollowing the lead of the U. S.

Supreme Court," recently held

> that, unless the statement is otherwise directly admissible against the defendant, the Confrontation Clause is violated by the admission of a nontestifying co-defendant's statement which inculpates the defendant by referring to the defendant's name or existence, regardless of the existence of limiting instructions and of whether the incriminated defendant has made an interlocking incriminating statement. A co-defendant's statement meets the Confrontation Clause's standard for admissibility when it does not refer to the existence of the defendant and is accompanied by instructions limiting its use to the case against the confessing co-defendant.

*Hanifa v. State*, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998). In this instance, the testimony was that Rooks told police that he was in the car that night with three other men, including Monroe. Rooks then said that the men arrived at the store and "the other men" began robbing it. The obvious inference was that Monroe was one of the "other men" and thus Rooks' statement inculpated Monroe in the robbery. Accordingly, we find that the admission of this testimony was a violation of the rule outlined in *Bruton*. See id. at 804; *McDonald v. State*, 210 Ga. App. 689, 690-691 (2) (436 SE2d 811) (1993).

However, upon reviewing all the evidence, we find that the admission of the statement was not sufficiently harmful to support a reversal in this case, as there was other, overwhelming evidence of Monroe's guilt. Monroe's own statement placed him at the scene of the crime, and he was positively identified by one of the clerks as one of the gunmen participating in the robbery while the other clerk made a tentative identification. Monroe was pulled from the vehicle that left the store and crashed after a high-speed chase. And four guns were found in and around the vehicle at the crash site. Rooks' statement did not implicate Monroe in the crimes more than this other evidence. Accordingly, we find that the admission of the statement was harmless error. *Hanifa v. State*, 269 Ga. at 804; *McDonald v. State*, 210 Ga. App. at 691.

4. Monroe also contends that the trial court erred in denying his motion to sever his trial from that of his co-defendant.

"Abuse of discretion amounting to a denial of due process must be shown before a trial court's decision on a motion to sever in a non-capital felony case will be overturned. [Cit.]" (Punctuation omitted.) *Hunnicutt v. State*, 234 Ga. App. 560, 561 (1) (507 SE2d 802) (1998). "To be entitled to a severance, the appellant must have made a clear

showing of prejudice resulting from joinder of these trials amounting to a denial of due process, rather than the mere possibility that a separate trial would improve appellant's chance of acquittal." (Citation omitted.) *Autry v. State*, 230 Ga. App. 773, 775 (3) (498 SE2d 304) (1998).

Monroe argues his trial should have been severed because he and Rooks presented antagonistic defenses, and because some of the evidence concerning the high-speed chase related to Rooks alone, but could have caused confusion among the jurors, resulting in their applying such evidence against Monroe. However, "[t]he mere fact that co-defendants' defenses are antagonistic is not sufficient in itself to warrant separate trials. A showing of harm is necessary." (Citations and punctuation omitted.) *Hunnicutt v. State*, 234 Ga. App. at 561.

Rooks was charged in this case with ten counts, including five counts relating to the high-speed chase. He was convicted on all ten counts. Prior to the introduction of any evidence relating to the chase, the trial court issued limiting instructions directing the jury to limit such evidence to Rooks. In contrast, Monroe was not charged with any offenses relating to the high-speed chase. He was indicted only on five counts of aggravated assault and armed robbery all relating to events occurring before the chase occurred. He was convicted of only three of those counts. This suggests that the jury was not confused by the evidence, and that "any purported tension between the defenses presented by the co-defendants did not result in harm to [Monroe]." *Hanifa v. State*, 269 Ga. at 806 (4). We find that the trial court did not abuse its discretion in refusing to sever. See *Autry v. State*, 230 Ga. App. at 775 (3); *Skidmore v. State*, 226 Ga. App. 130 (1) (485 SE2d 540) (1997).

5. In his remaining two enumerations, Monroe challenges the admission of his own statement. He argues the trial court erroneously found that the statement was freely and voluntarily given and thus incorrectly denied his motions to suppress the statement. Monroe asserts that his statement should have been suppressed because it was taken within hours after his involvement in the car crash and subsequent hospital treatment, and the investigating officer made no effort to determine if he was on any medication. He also notes that the officer failed to require proof that Monroe's grandmother, who was present when his statement was made, was his legal guardian or to determine if either Monroe or his grandmother were literate.

A trial judge's determination of whether a defendant is capable or incapable of making a knowing and intelligent waiver of his rights will be accepted unless such determination is clearly erroneous. *McCoy v. State*, 234 Ga. App. 879, 882 (1) (a) (508 SE2d 224) (1998).

To determine whether a defendant makes a voluntary and knowing statement a trial court must look at the totality of the circumstances.

> When the accused is a juvenile, the totality of the circumstances is determined through an analysis of nine factors: (1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge and the nature of the accused's rights to consult with an attorney and to remain silent; (4) whether the accused was held incommunicado or allowed to consult with relatives, friends, or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in the interrogation; (7) length of interrogation; (8) whether or not the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extrajudicial statement at a later date.

Id. at 880-881 (1) (a).

Monroe, who was 16½ years old and in the tenth grade, was interviewed by an officer from the Baldwin County Sheriff's Department at noon on the day of the robbery. Monroe was accompanied by his grandmother, who stated she was his legal guardian. The officer read Monroe his rights before speaking to him, and then allowed Monroe to read over a *Miranda* form, which informed him that he was suspected of armed robbery. Both Monroe and his grandmother signed the form. Monroe's grandmother gave the officer permission to speak with her grandson. The officer once again advised Monroe of his rights before taking his statement. Monroe appeared to be coherent and indicated that he understood his rights and was willing to make a statement. He showed no signs of intoxication and did not appear to have any difficulty understanding what was going on.

Monroe did not offer any evidence showing that his grandmother was not, in fact, his legal guardian, or indicating that either he or his grandmother was illiterate. Nor did he present any evidence regarding his physical condition or medication at the time he gave the statement.

In addition to the testimony from the investigating officer, the trial judge reviewed both Monroe's school records and a mental evaluation, which he had ordered performed on Monroe. Based upon his review of the record, the trial judge determined that the investigating officer had properly informed Monroe of his rights in front of his legal guardian and that Monroe had freely, knowingly and voluntarily waived his rights. Since the evidence supports the trial judge's findings, we find no error in the admission of Monroe's statement.

See *Hanifa v. State*, 269 Ga. at 805 (3); *Yorker v. State*, 266 Ga. 615, 617 (4) (469 SE2d 158) (1996); *McCoy v. State*, 234 Ga. App. at 882 (1) (a); *Skidmore v. State*, 226 Ga. App. at 131 (2).

*Judgments affirmed. Smith and Eldridge, JJ., concur.*

DECIDED MAY 20, 1999.

*Bellury & Luton, Evelyn P. Luton*, for appellant (case no. A99A0313).

*Jerry Boykin*, for appellant (case no. A99A0355).

*Fredric D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney*, for appellee.