## A04A0616. GARMON v. THE STATE.
(594 SE2d 779)

ELDRIDGE, Judge.

Sammy Joe Garmon, Jr. was convicted of one count of trafficking in methamphetamine. He appeals from the denial of his motion for new trial. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that on August 22, 2000, Agent Howard Waddell with the drug division of the Henry County Police Department arranged through a confidential informant ("CI") to purchase drugs from co-defendant Shawn Glass. Co-defendant Beretta Page Murtha testified for the State at trial. She testified that Glass was a friend of hers and that Garmon was her nephew. She further testified that Glass asked her to obtain a pound of methamphetamine for him. Glass arrived at Murtha's house to pick up the pound of methamphetamine; Garmon had arrived earlier for a visit. Murtha further testified that she and Glass went into another room to bag up the methamphetamine. Garmon remained behind in the living room. Murtha and Glass packaged the methamphetamine into a one-pound bag from which a small "sample" was taken out and packaged separately. When Murtha and Glass returned to the living room, Murtha asked Garmon to give Glass a ride to where he needed to go using Murtha's car.

---

Murtha testified that the pound of methamphetamine was worth $10,000; that she had paid her source $5,000; that her source trusted her to pay him the additional $5,000 later; and that Glass did not pay her any money for the drugs when he took them from her house. While Murtha testified at trial that Garmon did not know that he was transporting drugs in the car, she admitted that she had told the prosecutor at a previous meeting that she would not allow Glass to take drugs valued at $10,000 from her home unsupervised and that she had planned to go with Glass to Henry County, but Garmon offered to go in her place and supervise Glass.

In a controlled buy, the CI met Glass in the parking lot of the Chick-Fil-A restaurant located on Eagle's Landing Parkway in Henry County. The CI was wearing a microphone. Nearby narcotics officers observed the transaction between Glass and the CI, and Agent Brad Beard monitored the audio transmission from the microphone. Narcotics officers observed Glass walk from the next-door Texaco station parking lot and enter the CI's car which was parked in the Chick-Fil-A parking lot. During their negotiations, the CI and Glass exited the CI's car and walked to the Texaco station parking lot, and then returned to the CI's car. After Glass exited the CI's car, the CI waited 30 or 40 minutes and then returned to where Agent Waddell was located and provided him with a small plastic bag containing the methamphetamine sample which the CI had obtained from Glass.

Upon leaving the CI's car, narcotics officers observed Glass walk to the adjacent Texaco station, going in one side of the building and out the other. Glass then walked through the parking lot of the Waffle House located behind the Texaco station and entered and exited the building. Upon leaving the Waffle House, Glass walked back to the Texaco station and then crossed the street to the BP station. Garmon was parked in the BP station parking lot near the pay phone, and Glass entered the car on the passenger side. Narcotics officers followed as Glass and Garmon left the BP station minutes later.

Glass and Garmon drove to a nearby Citgo station and parked at the pay phone in the parking lot. At this point, narcotics officers decided to execute an arrest. A pink gift bag was found behind the passenger seat of the car Garmon was driving, which contained 439 grams of methamphetamine. A straw or empty pen casing which had been cut and a pocketknife were found in Garmon's pocket. Agent Ronald Patten testified that such items were commonly used to inhale methamphetamine or cocaine. *Held*:

1. In his first and fourth enumerations of error, Garmon challenges respectively the sufficiency of the evidence and the trial court's denial of his motion for directed verdict. Both enumerations allege that the State failed to prove actual or physical possession of

the methamphetamine in Garmon as there was no evidence that he knew drugs were in the car he was driving. We disagree.

While, as asserted by Garmon, Murtha testified at trial that Garmon did not know the drugs were in the car, Murtha also testified that she had told the prosecutor at a previous meeting that she would not allow Glass to take drugs valued at $10,000 from her home unsupervised and that she had planned to go with Glass to Henry County, but Garmon offered to go in her place and supervise Glass. See *Gunsby v. State*, 248 Ga. App. 18 (1) (545 SE2d 56) (2001) ("[E]ven though a witness may recant on the stand, his prior inconsistent statements constitute substantive evidence on which the jury may rely.") (footnote omitted). Further, when asked at trial why she did not let Glass drive her car, Murtha testified she did not trust him to do so. Murtha could offer no explanation for her inconsistent testimony that she trusted Glass with $10,000 worth of methamphetamine, but did not trust him with her car, a 1986 Camaro. This evidence was sufficient for a jury to conclude that Garmon was in knowing possession of the methamphetamine and that Garmon was sent by Murtha to protect her interest in the $10,000 worth of methamphetamine she had entrusted to Glass.

"[S]light evidence . . . from an extraneous source is all that is required to corroborate the accomplice's testimony, and thus, support the verdict. The necessary corroboration may be by circumstantial evidence. [Cit.]" (Punctuation omitted.) *Leonard v. State*, 241 Ga. App. 899, 900 (528 SE2d 540) (2000). In this case, the testimony of Murtha is corroborated by the fact that, at the time of Garmon's arrest, the package containing the 439 grams of methamphetamine was found behind the front passenger seat in the car Garmon was driving and that Garmon had items in his pocket commonly known to be drug paraphernalia. Further, there was evidence that, after Glass exited the car to meet with the CI, Garmon moved the car to a different location to await Glass' return after Glass completed the drug transaction, demonstrating his awareness of the need for secrecy.

Hence, the evidence was sufficient for a rational trier of fact to find that Garmon was guilty beyond a reasonable doubt of trafficking in methamphetamine.

2. Garmon alleges that the trial court failed to protect his rights by failing to rebuke the prosecutor and give the jury proper instruction or to declare a mistrial after the prosecutor stated to Murtha, "In other words, he was aiding in transporting these drugs to Henry County; is that correct?" The trial court sustained the objection made by Garmon's counsel. No further corrective action was requested by Garmon's counsel. It is well settled that "[a]fter an objection to an improper question or argument is sustained, there is no reversible error absent a request from the complaining party for further correc-

tive action. [Cits.]" *Pye v. State*, 269 Ga. 779, 788 (18) (505 SE2d 4) (1998).

3. Garmon further alleges that the trial court erred in allowing his character to be improperly placed in evidence. We disagree.

(a) Garmon alleges that his character was improperly placed into evidence when the trial court allowed Agent Turner to testify that the empty pen housing found in Garmon's pocket at the time of his arrest contained suspected methamphetamine residue. During direct examination of Agent Turner, the prosecutor asked if he recognized State's Exhibit 5. Agent Turner responded, "Yes, ma'am. This was a small pocket knife and it's an empty pen housing that's been — ." Counsel for Garmon interposed an objection at this point, which resulted in an unreported bench conference. There is no basis for the objection or the ruling thereon on the record. At the conclusion of the bench conference, the trial court directed the prosecutor to proceed, and the prosecutor asked Agent Turner to identify State's Exhibit 5. Agent Turner responded, "That's a small pocket knife and an empty pen housing that had suspected methamphetamine residue in it, taken from the pocket of Mr. Garmon when he was secured at the scene." No further objection to this testimony was made at this time by Garmon's counsel.

"Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f)." (Citations and punctuation omitted.) *Ivory v. State*, 199 Ga. App. 283, 284 (1) (405 SE2d 90) (1991). Because Garmon failed to have the basis for his objection and the trial court's ruling thereon preserved upon the record or transcript, "such objection is not preserved for review, because this Court has nothing before it to review. In the absence of either record or transcript, this Court must presume the correctness of the ruling by the trial court. [Cit.]" *Hodge v. Lott*, 251 Ga. App. 288, 290 (1) (553 SE2d 652) (2001).

Further, at the conclusion of the trial Garmon's counsel objected to the admission of State's Exhibit 5 based on the fact that "the testimony that the officer stated on it was that without a crime lab he didn't know what was in it. And the container refers to what might be in it." The trial court admitted State's Exhibit 5, but stated,

> I will sustain the objection to his testimony that it was suspected methamphetamine. That wasn't the objection that was made to the [c]ourt, but if you make such an objection I will sustain it and order the Jury to disregard that part of it because it's nothing but speculation on his part, has no probative value.

In response, Garmon's counsel stated, "Yes sir, we do make that objection." Garmon's counsel did not object on the grounds that such evidence was inadmissible character evidence, and therefore, his objection on this ground on appeal is waived.

> Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court.

(Citation and punctuation omitted.) *Morrison v. State*, 256 Ga. App. 23, 25 (2) (567 SE2d 360) (2002).

(b) Garmon further alleges that his character was placed into evidence when the prosecutor asked co-defendant Murtha, "Do you recall talking to me last night at the jail and telling me that you wanted [Garmon] to get probation?" At trial, Garmon's counsel objected "to anything as far as punishment in the case not being discussed in front of the jury," which was overruled by the trial court. Because Garmon did not assert impermissible character evidence as the basis for his objection at trial, he has waived the issue. *Morrison v. State*, supra.

Garmon's enumeration of error goes solely to impermissible character evidence. While he argues in his brief, that a "jury is charged not to concern itself with punishment," and the question was "misleading in that the minimum punishment the [c]ourt could/did give was 25 years imprisonment and a one million dollar fine[,]" "[a] party cannot use his brief to expand his enumerations of error to include issues or rulings not raised in the enumeration of error." (Footnote omitted.) *Gunsby v. State*, supra at 22 (3). Accord *Felix v. State*, 271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999); *McPetrie v. State*, 263 Ga. App. 85, 91, n. 22 (587 SE2d 233) (2003).

*Judgment affirmed. Adams, J., concurs. Ruffin, P. J., concurs in judgment only.*

DECIDED FEBRUARY 13, 2004.

*David E. Slemons*, for appellant.
*Tommy K. Floyd, District Attorney, Blair D. Mahaffey, Assistant District Attorney*, for appellee.