## A04A2316. SPIVEY v. THE STATE.
### (612 SE2d 65)

BERNES, Judge.

An Atkinson County jury convicted Geraldine Spivey of one count of rape (OCGA § 16-6-1 (a) (1)), two counts of incest (OCGA § 16-6-22), and eight counts of child molestation (OCGA § 16-6-4 (a)).[1] She appeals from the denial of her motion for new trial, challenging the sufficiency of the evidence on the rape count and alleging error with respect to the admission of child hearsay evidence and the denial of her ineffective assistance of counsel claim. For the reasons that follow, we affirm in part and remand for a hearing on Spivey's ineffective assistance of counsel claim.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence." (Punctuation and footnote omitted.) *Dean v. State*, 252 Ga. App. 204 (555 SE2d 868) (2001). In this regard, we neither weigh the evidence nor assess witness credibility; rather, we determine whether "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." (Footnote omitted.) *Reece v. State*, 241 Ga. App. 809 (527 SE2d 642) (2000).

So construed, the evidence shows that in August 1995, school officials became concerned that Spivey's four-year-old daughter, D., displayed sexually inappropriate and suggestive behavior during nap time at her pre-kindergarten class. The behavior was noted, but no further action was taken at that time. In October, Spivey and her husband, co-defendant John McDonald, attended a school conference at which time they were informed by a school resource coordinator that in order to continue school, D. needed a health check or physical and shots. McDonald refused the coordinator's offer to take D. for the physical and stated that Spivey and he would take D. themselves.

D. was absent from school the three days immediately following the conversation. The resource coordinator consequently made a home visit to inquire whether D. would be returning to school and to remind the parents about the necessity of obtaining a physical and shots for D. McDonald told the coordinator that D. would not be returning to school because she was fussy in the morning. During the course of the visit, the coordinator saw D. playing with her Barbie dolls as if the dolls were engaged in sex. The coordinator commented to D. that it looks like her Barbie can do a split and D. responded: "[T]hat doll ain't doing no split." Concerned that D. was displaying

---

[1] Spivey was sentenced to a total on all counts of life plus 20 years imprisonment.

signs of sexual abuse, the coordinator reported her observations to the Department of Family and Children Services ("DFACS").

Approximately one week later, on October 24, 1995, a social services case manager met with Spivey and McDonald and explained that a complaint had been made. McDonald was upset and stated he felt that "they" were out to get him because of his past and reported that he had previously been convicted of child molestation. In fact, McDonald had previously pled guilty to and been convicted of statutory rape and incest. The case manager requested an interview with D. and her six-year-old brother, R., and further requested that D. undergo a physical examination. Spivey and McDonald refused to grant the case manager access to the two children at that time.[2] An interview was scheduled, but Spivey and McDonald failed to appear at the appointed time with the two children.[3]

On November 21, 1995, an order was issued by a juvenile court directing Spivey and McDonald to cooperate with DFACS. At or about that time, Spivey and McDonald absconded to Live Oak, Florida, with the children. Spivey and McDonald failed to appear at a December hearing and the juvenile court thereafter ordered DFACS to take custody of the two children. The children were brought back to Georgia on January 18, 1996, and placed in foster care.

Twelve days later, on January 30, 1996, the case manager interviewed D. The case manager had previously been involved with about 250 cases of sexual abuse and had specialized training in interviewing children and in child sexual abuse cases. During the course of the interview, D. identified body parts on anatomically correct charts in terms beyond her years and told how McDonald "gave her sugar" in her vaginal area.[4]

The children remained in foster care through the time of trial. During this period of time, the children resided in three different homes. The children, who were then five and six years of age, resided with Shirley Robertson from January to August, 1996. She repeatedly observed the children behaving in a sexually inappropriate manner. D. "would ride the pillows" and play with her dolls sexually. R. asked Robertson to take off her clothes and lay down so he could French kiss her. The children also played a game called "buzz buzz"

---

[2] Spivey and McDonald did take D. for a physical examination four days later. Dr. Sammy Dixon, the examining physician, testified at trial that his physical examination revealed that D.'s hymen was intact. Dr. Dixon further testified it was possible for a penis to have been rubbed up against D.'s vaginal area without there being any physical manifestation. He also stated that his examination did not exclude the possibility that someone attempted to place a penis inside D.

[3] Instead, Spivey and McDonald took D. to their lawyer's office and conducted their own taped interview of D. which was introduced at trial.

[4] D. used a slang term to describe her vaginal area.

where they would try to touch Robertson's vagina. One day, Robertson went outside the house. When she returned, she found R., laying atop and French kissing D. D. was naked.

In April 1996, one day when D. was gardening with Robertson, D. asked if she could talk to Robertson about something. Robertson responded that D. could talk to her about anything. D. then asked Robertson whether it was okay to "go to bed with your daddy." D. told Robertson that Spivey had taken D. from D.'s bed and carried her to McDonald's bed. She stated that McDonald had his underpants off, that he had "mess[ed]" with her and he had "messed" all over the bed. She told Robertson that her father had hurt her. As time passed, D. gradually disclosed more information. D. told Robertson she had not told her earlier because she was afraid and she did not want family services to know "any bad things about them."[5]

In June, D. told Robertson that McDonald had hurt R., too. R., so embarrassed that his face turned red, confirmed that McDonald had hurt him. R. went to his room and placed his face in the pillow. R. said that "it hurt me, it was real hard."

The children were placed with foster parent Bonna Fay Griner Stalvey from August 1996 until October 1997. Stalvey saw D. behaving in a sexually provocative manner on several occasions. R. disclosed that McDonald (his father) had done "bad things" to them and that both of his parents had engaged in sex with him and D. D. confirmed what R. had stated and told Stalvey that "it was too big, he couldn't get it in, but . . . he would rub it." D. told her he would start off with his fingers, but he took his "thing" and rubbed it up and down on her "tutu." One day D. told Stalvey that she did not like the Vaseline Intensive Care Lotion that Stalvey was using because it smelled like the kind that her father had used on her.

On another occasion, R. told Stalvey, he saw McDonald come into the bedroom he had shared with D. and "hump" D. R. also told Stalvey of another incident in which McDonald took R. into McDonald's bedroom, placed R. atop Spivey who was naked, and then stimulated R.'s penis commenting to Spivey, "look, mamma what your little boy will do. . . ."

In November 1996, Stalvey took the children to see psychologist Dr. Carrie Pagels. Pagels saw the children six times. Both children recounted numerous instances of sexual abuse to Pagels. On one occasion, D. recounted an instance in which Spivey, while naked, awakened D., carried her to the bedroom Spivey shared with McDonald, and placed the child in bed with McDonald. McDonald, also

---

[5] In February and March 1996, the two children were seen by Dr. Allen Smith. The children did not disclose any sexual abuse to Dr. Smith.

naked, removed the child's nightgown, applied lotion to her, and lying on top of the child while squeezing her stomach "stuck his pee thing in [her]." Spivey, still naked and lying on the bed as well watched, saying that it was all right. The child was unable to cry because of McDonald's weight on top of her.

R. reported other incidents to Pagels in which Spivey would carry R. from his bedroom into the bedroom she shared with McDonald. Spivey would watch as McDonald messed with his "pee thing," wiggling it with his finger.

The children also disclosed instances of sexual abuse perpetrated upon them by Spivey and McDonald to Cheryl Barwick, the foster parent with whom the children resided from October 1997 through the time of trial in 1999; to Renee Harris, a DFACS case manager, who was assigned to the children while the children were with Stalvey; and to Dr. Eugene Engen, a psychologist the children counseled with from December 1997 to January 1999. In addition, both D. and R., nine and ten at the time of trial, testified to acts of sexual abuse perpetrated by Spivey and McDonald.

1. Spivey contends the evidence was insufficient to support her conviction of rape, arguing that the State failed to prove the element of force. At the time of the acts alleged in the indictment, OCGA § 16-6-1 (a) (1) defined rape as "carnal knowledge of . . . [a] female forcibly and against her will."[6] See *State v. Collins*, 270 Ga. 42 (508 SE2d 390) (1998). No more than minimal force was required to prove the rape of a child. Id. at 44-45. "[T]he term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation." (Footnote omitted.) Id. at 43. The evidence in the instant case was sufficient to establish that the rape of the five-year-old child was accomplished by acts of physical force. *Pollard v. State*, 260 Ga. App. 540, 542 (3) (580 SE2d 337) (2003).

Evidence at trial showed that Spivey carried the child from her bed to the bed Spivey shared with co-defendant McDonald. Spivey watched McDonald lay on top of the child squeezing her stomach and rendering her unable to cry out even when McDonald hurt her by placing his penis in her vagina. Construing the evidence in the light most favorable to the verdict, any rational trier of fact could have found that Spivey was a party to McDonald's forcible rape of her daughter. See *Hixon v. State*, 251 Ga. App. 27, 27-29 (1) (553 SE2d 333) (2001).

---

[6] The acts alleged in the indictment occurred prior to the 1999 enactment of OCGA § 16-6-1 (a) (2), which removed the elements of force and lack of consent from the definition of rape when the crime is committed upon a female less than ten years of age. *State v. Lyons*, 256 Ga. App. 377, 379 (568 SE2d 533) (2002).

2. Spivey contends the trial court's admission of child hearsay pursuant to OCGA § 24-3-16 violated her Sixth Amendment right of confrontation. Spivey does not show how this allegation of error was preserved for appeal as required by Court of Appeals Rule 25 (a) (1), nor does she show by citation to the record that the issue was raised and ruled on by the trial court. "[I]nasmuch as we are a court for the correction of errors, we do not consider issues which were not raised below and ruled on by the trial court." (Citation omitted.) *Mann v. State*, 259 Ga. App. 553, 554 (2) (578 SE2d 238) (2003). Accordingly, this allegation of error presents nothing for review.

3. Spivey further contends that the trial court's admission of certain hearsay statements of the two children violated the dictates of *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998). In *Woodard*, the Supreme Court of Georgia declared unconstitutional a 1995 amendment to the Child Hearsay Statute which allowed the introduction into evidence of hearsay declarations made by a child under the age of 14 who witnessed an act of sexual or physical abuse. Id. at 321-323 (3). Spivey did not urge this objection at trial. Thus, allegation of error has not been preserved for appeal. *Mann v. State*, supra at 554 (2).

4. Finally, Spivey contends that she received ineffective assistance of counsel at trial.[7] Spivey was represented at the motion for new trial hearing by her trial counsel. Trial counsel did raise an ineffective assistance of counsel claim. However,

> we do not deem the issue of ineffective assistance to have been properly before the trial court as counsel cannot be expected to properly assert and argue his or her own ineffectiveness. As appellate counsel [entered the case] after the motion for new trial was denied, and after trial counsel filed the notice of appeal, the case is remanded to the trial court for appropriate consideration of the issue of ineffective assistance of trial counsel.

---

[7] Spivey asserts the plain error rule, as to certain allegations within the context of her ineffective assistance of counsel claim. The plain error rule allows this Court to consider error not raised or ruled upon in the trial court. *Sanchez v. State*, 234 Ga. App. 809, 811 (3) (508 SE2d 185) (1998). It is doubtful that Spivey's plain error assertion is within the scope of the enumerated errors. "[A] party cannot use his brief to expand his enumerations of error to include issues or rulings not raised in the enumeration of error." (Citations and punctuation omitted.) *Garmon v. State*, 265 Ga. App. 622, 626 (3) (b) (594 SE2d 779) (2004). Moreover, the instant case does not present "exceptional circumstances," as the underlying allegations will be resolved within the context of Spivey's ineffective assistance of counsel claim. *Sanchez v. State*, supra at 811 (3).

(Citations omitted.) *Bates v. State*, 275 Ga. 862, 866 (5) (572 SE2d 550) (2002).[8]

*Judgment affirmed and case remanded with direction. Ruffin, P. J., and Adams, J., concur.*

DECIDED MARCH 16, 2005.

*James L. Hardin*, for appellant.
*Robert B. Ellis, Jr.*, District Attorney, *Timothy L. Eidson*, Assistant District Attorney, for appellee.

---

[8] Spivey attached an affidavit of trial counsel to her brief which purported to explain whether or not trial counsel's failure to object to certain evidence was strategic. "A brief or an attachment thereto cannot be used as a procedural vehicle for adding evidence to the record. We must take our evidence from the record and not from the brief of either party." (Citation and punctuation omitted.) *Brumelow v. State*, 239 Ga. App. 119, 120 (1) (520 SE2d 776) (1999).