## WHOLE COURT

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1427; A14A1428.   DEMPSEY   et   al.   v. GWINNETT   JE-074, JE-
HOSPITAL SYSTEM, INC.; and vice versa.        075

ELLINGTON, Presiding Judge.

A Gwinnett County jury returned a verdict in favor of Melissa Dempsey, individually and as the guardian of her daughter, Kailey Watson, in this medical malpractice case. Thereafter, defendant Gwinnett Hospital System, Inc. filed a motion for new trial or, in the alternative, a judgment notwithstanding the verdict ("JNOV"). In its motion, the hospital contended, inter alia, that the trial court erred in admitting the testimony of one of Dempsey's expert witnesses, a certified nurse midwife ("CNM") on the ground that she was not properly qualified under OCGA § 24-7-702 (c) (2) (C) (i) to testify on the standard of care applicable to the registered professional nurses ("RNs") who attended Dempsey's labor and delivery because she

was not a member of "the same profession" as the RNs as that term is defined by law. The court granted the motion for a new trial based solely upon this legal issue. In Case No. A14A1427,[1] Dempsey contends, inter alia, that the trial court erred in so concluding and that this Court should reverse the grant of a new trial to the hospital.[2] For the following reasons, we hold that the trial court erred in finding that the CNM was not a member of the same profession as the hospital's RNs; consequently, we reverse.

*Case No. A14A1427*

1. Because the trial court granted the hospital's motion for new trial on a special ground – a legal question concerning the meaning of the term "the same profession" as used in OCGA § 24-7-702 (c) (2) (C) (i) – instead of the general grounds, we review the ruling de novo. *Hankla v. Postell*, 293 Ga. 692, 693 (749 SE2d 726) (2013) (using de novo standard of review where issue to be decided was

---

[1] This Court granted Dempsey's application for an interlocutory appeal.

[2] In Case No. A14A1428, the hospital cross-appeals, asserting that, even if this Court finds that the trial court erred in granting a new trial based upon the admission of the expert witness' testimony, the court erred in failing to grant its motion for a new trial or a JNOV based upon other arguments that the hospital had asserted. However, for the reasons stated in Division 3, we dismiss the cross-appeal without prejudice.

2

purely legal); *Government Employees Ins. Co. v. Progressive Cas. Ins. Co.*, 275 Ga. App. 872, 873-874 (622 SE2d 92) (2005) (accord).

So viewed, the relevant, undisputed facts are as follows. Dempsey is the mother of Kailey Watson, a child with permanent physical and mental disabilities. Dempsey alleged that Kailey's disabilities resulted from traumatic brain injury that occurred when she suffered fetal distress and oxygen deprivation during her birth, complications that the RNs attending the labor and delivery negligently failed to detect and to address. Dempsey averred that the hospital's RNs negligently misread and/or misinterpreted data from a fetal monitor and committed other violations of the applicable standard of care. At trial, Dempsey presented the testimony of two expert witnesses on the question of the nurses' negligence – Colleen Mannering, the CNM, and an obstetrician. Both offered testimony concerning whether the RNs attending the labor and delivery breached the standard of care applicable to the RNs.

With respect to whether Mannering was qualified to give that expert opinion, the record shows that, during the five years preceding Kailey's birth, Mannering practiced as a CNM, both supervising and working with RNs as part of a labor and delivery team. She testified that she has practiced in the area of labor and delivery for nearly two decades, beginning her career as an RN, holding the same professional

3

license held by the hospital's RNs. Mannering then acquired additional education and training to become certified as a nurse practitioner and, later, as a CNM. Although Mannering has practiced as a CNM since 1996, she is also licensed as an RN. She testified that she is familiar with the standard of care regarding reading and interpreting fetal monitoring strips, and that the applicable standard of care for providing these services is the same for RNs and for CNMs.

(a) The narrow question before this Court is whether the trial court erred in ruling that Mannering is not qualified to offer expert testimony on the standard of care applicable to the hospital's RNs because she, as a CNM, is not a member of the same profession as the RNs, whose conduct is at issue. In resolving this question, we must first apply OCGA § 24-7-702 (c)[3], a subsection of the Evidence Code governing the admissibility of expert testimony, which provides in pertinent part:

> [I]n professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the

---

[3] Because the trial in this case took place in January 2013, the new Evidence Code applies. The new Evidence Code became effective on January 1, 2013, and applies to any motion made or hearing or trial commenced on or after such date. Ga. L. 2011, § 101, p. 52. Further, because OCGA § 24-7-702 is "substantively identical" to its predecessor statute, former OCGA § 24-9-67.1, cases decided under the former statute offer useful guidance when analyzing the current version of the statute. *Hankla v. Postell*, 293 Ga. 692, n. 1.

professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert:

(1) Was licensed by an appropriate regulatory agency to practice his or her profession in the state in which such expert was practicing or teaching in the profession at such time; and

(2) In the case of a medical malpractice action, had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in:

(A) The active practice of such area of specialty of his or her profession for at least three of the last five years . . . ; or

(B) The teaching of his or her profession for at least three of the last five years . . . and

(C) Except as provided in subparagraph (D)[4] [of this paragraph[,] . . . [i]s a member of the same profession. . . .

---

[4] Subparagraph D applies to physicians who, under certain circumstances, may offer expert testimony concerning the standard of care applicable to certain non-physician medical personnel. It also provides that those non-physician medical personnel are not, conversely, competent to testify as to the standard of care applicable to a physician under like circumstances. That "nurse" and "nurse midwife" are listed separately in this subpart does not persuade us that the two are separate professions.

Pursuant to this statute,

> to qualify as an expert in a medical malpractice action under OCGA §
> 24-7-702 (c), the [non-physician] witness must (1) have actual
> knowledge and experience in the relevant area through either "active
> practice" or "teaching" *and* (2) . . . be in the "same profession" as the
> defendant whose conduct is at issue[.]

(Emphasis original.) *Hankla v. Postell*, 293 Ga. at 694. See also *Smith v. Harris*, 294 Ga. App. 333, 336-337 (1) (670 SE2d 136) (2008) (accord).

The Evidence Code does not define what is meant by the phrase "a member of the same profession," and our case law has not provided a clear definition. There are several cases that offer some guidance on determining whether two professions are *not* the same. In *Smith v. Harris*, for example, we held that a pharmacist could not offer expert testimony in a trial against a medical doctor because the two were not members of the same profession. 294 Ga. App. at 336-337 (1). In determining that the two professions were not the same, this Court relied upon OCGA § 9-11-9.1 (g), which lists the professions to which the expert affidavit requirement for malpractice actions applies, and we noted that "medical doctors" and "pharmacists" are enumerated separately. 294 Ga. App. at 336-337 (1). Later, in *Ball v. Jones*, 301 Ga. App. 340, 341 (687 SE2d 625) (2009), this Court likewise held that a nurse could not

6

give expert testimony at trial against a licensed physical therapist because OCGA § 9-11-9.1 explicitly categorized nurses and physical therapists as practicing separate professions.

Recently, in *Bacon County Hosp. & Health System v. Whitley*, 319 Ga. App. 545, 549-550 (737 SE2d 328) (2013), we held that the plaintiff in a medical malpractice action could not introduce the testimony of a chiropractor against a physical therapist because the two professions are not the same. Once again, we looked to OCGA § 9-11-9.1, noting that chiropractors and physical therapists are listed separately. The plaintiff, who sought to introduce the chiropractor's testimony, argued that in the chiropractor's home state of Florida, the two occupations were not viewed separately. We rejected this argument, observing that although there exists "some overlap in activities," chiropractors and physical therapists are defined differently under Florida law, are governed by different regulatory boards, and have different licensing requirements. Id. at 549. Thus, in those cases where express statutory authority as to what constitutes the same or distinct professions is lacking, we are guided by professional licensing laws and regulatory schemes to determine whether a witness is a member of the same profession as the person whose conduct is at issue within the meaning of OCGA § 24-7-702 (c) (2) (C) (i).

7

In this case, the trial court ruled that Mannering was not a member of the same profession as the hospital's RNs because she is a CNM. But it is undisputed that Mannering is *both* an RN and a CNM. Georgia law requires a CNM to be licensed as an RN and both are regulated by the Georgia Board of Nursing.[5] A review of this regulatory scheme reveals that a CNM is an RN who has advanced training in a specialized area.[6] Further, the expert affidavit statute upon which we relied in *Smith*, *Ball*, and *Whitley*, lists only "nurses"; it does not have a separate listing for "certified

---

[5] Under the "Georgia Registered Professional Nurse Practice Act," OCGA § 43-26-1 et seq., the Georgia Board of Nursing is recognized as the regulatory Board governing all who are licensed pursuant to the Act. OCGA §§ 43-26-4, 43-26-5. A "certified nurse midwife" ("CNM") is classified under the Act as an "advanced practice registered nurse," and a CNM must be licensed as a registered professional nurse ("RN") who has completed additional educational and/or certification requirements. OCGA § 43-26-3 (1), (1.1), (9); see also Ga. R. & Reg. 410-12-.01 (2) (b) ("'Advanced nursing practice' means practice *by a registered professional nurse* who meets those educational, practice, certification requirements, or any combination of such requirements, as specified by the Board and includes certified nurse-midwives, nurse practitioners, certified registered nurse anesthetists, clinical nurse specialists in psychiatric/mental health, and others required by the Board.") (emphasis supplied); Ga. R. & Reg. 410-12-.02 (1) (a) ("A certified nurse-midwife is *a registered professional Nurse* who has completed/graduated from a post-basic educational program for nurse midwives which included theoretical and practical components and evidence of advanced pharmacology within the curriculum or as a separate course.") (emphasis supplied); Ga. R. & Reg. 511-5-1-.02 (A CNM must have "a current license or temporary permit to practice as a registered professional nurse in Georgia[.]")

[6] See id.

8

nurse midwives." See OCGA § 9-11-9.1 (g) (12). Thus, that statute does not support an inference that the professions are different. Dempsey has offered no other persuasive authority (nor have we found any) from which we may infer a basis for holding that a CNM should not be considered a member of the same profession as an RN.[7]

Given the undisputed facts and the law set forth above, we conclude that Mannering is a member of the same profession as the hospital's RNs. Thus, the trial court erred in granting the hospital's motion for a new trial on the ground that Mannering could not testify as to the standard of care exercised by those RNs because she is not a member of the same profession.

(b) During oral argument before this Court, the hospital argued that Mannering was unqualified to testify against its RNs under the "actual professional knowledge and experience" requirements of OCGA § 24-7-702 (c) (2). The record shows that the

---

[7] The hospital argues that OCGA § 31-26-1 et seq, concerning the "Practice of Midwifery," classifies midwives as a profession separate from nurses. It does not. Rather, the statute was enacted to provide the state with authority to regulate those calling themselves midwives, that is, anyone "not licensed under the laws of this state to practice obstetrics who is regularly engaged in attending women in childbirth or who holds himself or herself out as such[.]" OCGA § 31-26-1 (1). See 1955 Ga. Laws p. 252, § 1. The statute is something of a historical vestige given that, pursuant to Ga. R. & Reg. 511-5-1-.02, a CNM must have "a current license or temporary permit to practice as a registered professional nurse in Georgia[.]")

9

hospital raised this argument in its motion for new trial. However, the trial court granted the motion for new trial based solely upon its conclusion that Mannering was not a member of the "same profession," evaluating only that requirement of subsection (c) (2) (C) (i), and did not reach any of the other arguments raised by the hospital in support of the motion. Thus, this issue is not ripe for our review. See Division 3, infra.

2. Dempsey contends that, even if Mannering's testimony should have been excluded because she is not a member of the same profession as the hospital's RNs, the trial court erred in granting a new trial on that basis because her testimony was merely cumulative of the obstetrician's testimony on the standard of care.[8] However, because we have ruled that the trial court erred in finding that Mannering's testimony was inadmissible, this issue is moot. See Division 1, supra.

*Case No. A14A1428*

---

[8] The hospital conceded that the obstetrician is qualified to testify about the standards of care applicable to both RNs and CNMs. It also conceded at trial that, even without Mannering's testimony, Dempsey met her burden of establishing the standard of care for the nurses through the obstetrician's testimony. Defense counsel argued that, as a result, if the court excluded Mannering's testimony on the standard of care, "the strength of the [p]laintiff's case" would *not be affected* and the exclusion would have "no prejudicial effect" on the plaintiff.

10

3. In its cross-appeal, the hospital contends that the trial court erred in denying its motion for a directed verdict or its motion for JNOV on several grounds. Our review of the record reveals that the trial court did not, either expressly or impliedly, issue a ruling denying any of the remaining grounds for relief asserted in the hospital's motion, which remains pending below. The hospital acknowledges in its brief that "[t]he subject of this cross-appeal is the remaining grounds contained in the [h]ospital's motion for new trial and remittitur, *which were not ruled on by the trial court*."

The Appellate Practice Act provides that "this article shall be liberally construed so as to bring about a decision on the merits of every case appealed." OCGA § 5-6-30. The Act disfavors "multiple appeals and piecemeal litigation." (Citation omitted.) *Cochran v. Levitz Furniture Co.*, 249 Ga. 504, 505 (1) (291 SE2d 535) (1982). Nevertheless, in authorizing cross-appeals in civil cases, it is fundamental that there must exist an adverse ruling of the trial court from which an appeal may be taken. The Act provides that, when an appellee cross-appeals, he may present "*all errors or rulings adversely affecting him*[.]" (Emphasis supplied.) OCGA § 5-6-38 (a). See also *Ga. Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 711 (1) (363 SE2d 140) (1987) ("The general rule is that an appellee must file a

11

cross-appeal to preserve [claims] of error concerning *adverse rulings*. OCGA § 5-6-38[.]") (citation omitted; emphasis supplied).

Because the trial court has not entered an order addressing and ruling upon the remaining grounds raised in the hospital's motion, it would be improper for this Court to address them in this appeal. "Inasmuch as we are a court for the correction of errors, we do not consider issues which were not raised below and ruled on by the trial court." (Citation and punctuation omitted.) *Spivey v. State*, 272 Ga. App. 224, 228 (2) (612 SE2d 65) (2005). Further, "Georgia appellate courts are not authorized to render advisory opinions as to potential error." (Citations omitted.) *Bibbins v. State*, 280 Ga. 283, 284-285 (627 SE2d 29) (2006). See also *City of Atlanta v. Hotels.com*, 285 Ga. 231, fn. 4 (674 SE2d 898) (2009) (citation and punctuation omitted) (accord). Whether the hospital is entitled to the relief it seeks

> is still an open question, one for the court below to address on remand, and the issues presented in the cross-appeal may well turn out to be moot. Consequently, it is unnecessary for us to pass upon these issues at this time, and we dismiss the cross-appeal without prejudice to [the hospital] raising these issues again in any subsequent appeals.

(Citation omitted.) *An v. Active Pest Control South*, 313 Ga. App. 110, 117 (720 SE2d 222) (2011).

12

*Judgment reversed in Case No. A14A1427. Appeal dismissed without prejudice in Case No. A14A1428. Phipps, C. J., Barnes, P. J., and McFadden, J., concur. Andrews, P. J., Ray and McMillian, JJ., dissent.*

A14A1427, A14A1428. DEMPSEY v. GWINNETT HOSPITAL

      SYSTEM, INC.; and vice versa.


     McMILLIAN, Judge, dissenting.

     Because I believe that the trial court correctly found that Mannering was not a member of the same profession as the hospital's RNs, I must respectfully dissent. OCGA § 24-7-702 (c) (2) specifically governs expert testimony in medical malpractice cases, and subsection (c) (2) (C) (i) requires that a proffered expert be "a member of the same profession" as the defendant whose conduct is at issue. Subsection (c) (2) (D) goes on to provide the sole exception to that requirement. An otherwise qualifying physician may testify as to the standard of care provided by "nurses, nurse practitioners, certified registered nurse anesthetists, nurse midwives, physician assistants, physical therapists, occupational therapists, or medical support

staff" that he or she has "supervised, taught, or instructed." OCGA § 24-7-702 (c) (2) (D). There is no other statutory provision permitting a member of any of the enumerated medical professions to testify as to the standard of care of any other separately enumerated profession, and significantly, nurses and nurse midwives are separately enumerated as medical professionals against whom a physician may testify.

Moreover, the fact that nurses and nurse midwives are not listed separately within the more general OCGA § 9-11-9.1 (g) does not persuade me that the legislature intended for them to be treated the same when deciding whether they are of the "same profession" as that term is used in OCGA § 24-7-702. Rather, OCGA § 9-11-9.1 (g) is prefaced by the clause "[t]he professions to which this Code section [requiring an affidavit to accompany a charge of professional malpractice] shall apply are . . ." without defining any of the professions listed therein. Furthermore, OCGA § 24-7-702 (e) modifies OCGA § 9-11-9.1 and specifically requires that all affiants "shall meet the requirements of this Code section in order to be deemed qualified to testify as an expert by means of the affidavit required under Code Section 9-11-9.1." As our Supreme Court explained, the "same profession" requirement of OCGA § 24-7-702 (c) (2) (C) (i), which was not previously recognized in Georgia, "was part of the legislature's effort to impose more exacting requirements on expert witnesses in

2

medical malpractice cases." *Hankla v. Postell*, 293 Ga. 692, 696 (749 SE2d 726) (2013).

Thus, I am convinced that the more specific requirements of the *Daubert* statute control whether a nurse midwife is qualified to testify as to the standard of care of an RN.[1] See *Hubert Properties, LLP v. Cobb County*, 318 Ga. App. 321, 323 (1) (733 SE2d 373) (2012) ("It is well settled that a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them.") (citation and punctuation omitted). Accordingly, I would affirm the trial court's grant of the hospital's motion for new trial.

I am authorized to state that Presiding Judge Andrews and Judge Ray join in this dissent.

---

[1] I also have concerns as to whether Mannering was qualified under OCGA § 24-7-702 (c) (2) (A) in that she had not been engaged in the active practice as an RN since at least 1996.

3